[No. 17310–3–I.   Division One.   September 28, 1987.]

RAY R. ESCALANTE, ET AL, *Appellants,* v. SENTRY INSURANCE COMPANY, *Respondent.*

376

*Michael E. Ritchie* and *Ellis & Li,* for appellants.

*Matt Murray* and *Murray, Dunham & Murray,* for respondent.

REVELLE, J.*—Appellants Ray and Esther Escalante, and the estate of Linda Christine Escalante, appeal from an order denying their motion to compel discovery and an order of summary judgment dismissing their action. We reverse and remand.

## FACTS

On December 12, 1982, Linda Christine Escalante was killed in an automobile accident while riding as a passenger

---

*This appeal was heard by a Supreme Court Justice, a Superior Court Judge, and a retired Superior Court Judge sitting as Judges Pro Tempore in Division One.

in a car being driven by Mrs. Nova Jean Brooks. The accident was caused by the concurrent fault of two third parties. Mrs. Brooks was injured in the accident.

Respondent Sentry Insurance Company provided underinsured motorist (UIM) insurance covering the Brooks automobile. Linda Christine Escalante was covered under the following language of the UIM endorsement:

> Anyone *occupying* with *your* permission, a *car* we insure has the same rights and obligations that *you* have under this insurance.

The policy also contained a single limit of $100,000, out of which the claims of Ray and Esther Escalante, appellants herein, and the named insured, Nova Jean Brooks, needed to be satisfied.[1]

Shortly after the accident, appellants informed Sentry of their claim for benefits under the UIM coverage. At Sentry's request, appellants then brought suit against the tortfeasors on May 5, 1983, and obtained an order of default against one (who was uninsured) on June 21, 1983. The case against the other tortfeasor was settled after the payment of his liability insurance policy limits ($50,000) in October 1983.

On October 31, 1983, appellants informed Sentry that they believed their claim was worth in excess of $100,000, and asked that Sentry pay them $50,000 in settlement of their UIM claim. However, according to appellants, Sentry did not immediately respond to their offer of settlement. Instead, on December 12, 1983, Sentry informed appellants' counsel that "we are waiting for additional information on Nova Jean Brooks and for evaluation discussions with our guiding office [and therefore] we are unable to make a reply to your $50,000.00 demand at this time".

On February 6, 1984, Sentry received a settlement offer from Nova Jean Brooks' attorney for $50,000, contingent on

---

[1]The record indicates that as early as June 1983, Sentry had set aside reserves of $50,000 to cover appellants' claim, and another $50,000 to cover the Brooks' claim.

settlement of appellants' claim for $50,000.

On March 5, 1984, appellants' attorney received a letter from Sentry which stated:

> This is to follow up our conversation regarding the Miller Casualty Insurance case and your $90,000 demand.
>
> Pursuant to this case coming to our attention, our Company is taking the position that Underinsured Motorist coverage is to be treated like first party coverage. We further take the position that Underinsured Motorist coverage cannot be stacked externally.
>
> As you are aware, the Escalantes have their own Underinsured Motorist coverage through Farmers Insurance Company, and we feel that their Company is where Christine Escalante's Underinsured Motorist claim belongs.
>
> After you have had the opportunity to examine the Miller case, we ask that you formally drop any UIM claim that the Escalante Estate may have against Nova Jean Brooks.

That same day, appellants' attorney sent a letter to Sentry stating why Sentry's legal position was incorrect, and requesting arbitration if the matter was not immediately resolved.

On April 25, Sentry sent a letter to appellants' attorney reiterating the position that appellants must obtain UIM benefits from their own carrier. By letter dated May 8, appellants' attorney again pointed out to Sentry why its legal position was incorrect. The letter also stated that Sentry's "denial of coverage . . . violate[d] its duty of good faith," and also demanded settlement within 10 days. Several days later, Sentry sent appellants' attorney another letter which repeated Sentry's position regarding the proper source of appellants' UIM coverage, but then offered to settle appellants' claim. The letter also stated that Sentry would work out any UIM coverage problems with appellants' insurer, Farmers Insurance Company, at a later date, and that Sentry could not reply to appellants' settlement demand until it had completed an evaluation of Nova Jean Brooks' claim.

On June 14, 1984, appellants' attorney sent another letter

to Sentry which stated in part:

> As you will recall, by letter dated May 8, 1984, this office advised you of our position with respect to Sentry's failure to honor its obligations to our client under the Underinsured Motorist endorsement of your insured's policy. Your reply letter of May 11 was encouraging insofar as it reflected a belated acknowledgement of Sentry's obligation to our client and a willingness to pay now and work out any coverage problems with Farmers later.
>
> However, the final paragraph of your letter, as well as the total lack of any follow–through on this obligation, only corroborates our potential claim for bad faith on the part of Sentry. Specifically, you refer to a need for "additional information" on your insured, although this claim has been pending for over 18 months and more than adequate information is already in your possession. In addition, you curiously refer to "another offer" as being forthcoming, even though Sentry has thus far made no offer whatsoever to our client. Most importantly, notwithstanding your assurances that we would be hearing from you immediately in this regard, this office has received no further contact of any kind during the month that has elapsed since your letter.
>
> Therefore, unless this firm receives certified funds in the amount of $100,000 (payable to Esther and Ray R. Escalante, individually and as administrators of the Estate of Linda Christine Escalante) no later than 5:00 p.m. Thursday, June 21, we will on the following business day file a declaratory judgment action in King County Superior Court and seek compensatory and punitive damages as well as attorneys' fees and costs . . .

On June 20, 1984, appellants received an offer of settlement from Sentry for the amount of $20,000 contingent on settlement of Nova Jean Brooks' claim. On June 22, 1984, Sentry offered to settle Nova Jean Brooks' claim for $30,000, contingent on appellants' acceptance of its $20,000 settlement offer.

Appellants rejected the $20,000 offer, and filed this action for bad faith, breach of contract, violation of the Consumer Protection Act (CPA), violation of Washington Administrative Code (WAC) regulations, negligence, tortious interference with protected property interest, tort of

outrage, and negligent infliction of emotional distress on June 25, 1984. Approximately 1 month later, Sentry demanded arbitration of the matter. Though appellants resisted arbitration, on September 28, 1984, the superior court granted a motion to stay the proceedings and ordered arbitration on the issue of the amount of damages payable under the policy. The arbitration hearing was conducted on January 28 and 29, 1985, for the sole purpose of determining the amount of benefits payable to appellants under the underinsured motorist endorsement. Prior to the arbitration hearing, Sentry paid $10,000 of the available $100,000 to Mrs. Brooks in full settlement of her claim.

On January 30, 1985, the arbitration panel awarded appellants $165,000, representing the full available policy limits of Sentry's policy ($90,000) plus the policy limits of the appellants' coverage with Farmers ($25,000) and the $50,000 already paid to them by the tortfeasor's liability insurer.

On June 21, 1985, several months after the arbitration award, the superior court denied appellants' motion to compel answers to discovery from Sentry and awarded terms of $500 against appellants' counsel. On July 5, 1985, the court denied appellants' motion for reconsideration and again awarded terms against their counsel in the sum of $250.

On September 27, 1985, the trial court granted respondent Sentry's motion for summary judgment, and this appeal followed.[2] The issues raised are (1) was this action barred by the arbitration clause in Sentry's policy, (2) do appellants lack standing to bring claims against respondent for bad faith, breach of contract, or violations of the CPA, (3) can a negligence per se claim be based upon WAC regulations, (4) did the trial court err in denying appellants' motion to compel discovery or in assessing terms against appellants' counsel, and (5) is there a genuine issue of fact

---

[2]In a separate order, the trial court also granted summary judgment dismissing Farmers Insurance Company. Appellants have not appealed from that order.

as to appellants' claims?

In reviewing a summary judgment order, this court engages in the same inquiry as the trial court. *Hostetler v. Ward*, 41 Wn. App. 343, 704 P.2d 1193 (1985). Summary judgment is proper only when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). Thus, we consider the various affidavits of proof, arguments and other pertinent documents furnished us in the record.

### ARBITRATION

Appellants first contend the trial court erred in granting summary judgment because the arbitration provision[3] in the policy at issue was inapplicable to this action, and was not a mandatory or exclusive remedy. On the other hand, Sentry argues that the trial court properly entered summary judgment because appellants' exclusive remedy under the policy was through arbitration. Citing *Garmo v. Dean, Witter, Reynolds, Inc.*, 101 Wn.2d 585, 681 P.2d 253 (1984), Sentry argues that an agreement to settle disagreements by arbitration precludes any other judicial action.

In *Garmo*, the court considered whether customers of a securities broker could pursue various statutory and nonstatutory claims against the broker in court despite the existence of a broadly worded arbitration provision in the customers' agreements. The *Garmo* court held that the federal arbitration act mandates that all claims, either statutory or nonstatutory, arising under a written brokerage agreement must be settled by arbitration in accordance with the terms of the brokerage agreement. Sentry argues that *Garmo* is controlling here because Washington's statute governing arbitration agreements, RCW 7.04.010, is

---

[3]The arbitration provision states:

"Arbitration—If we and *you*, or your legal representative, don't agree on *your* legal rights to receive *damages*, or the amount of *damages*, then upon the written request of either party, the disagreement will be settled by arbitration."

essentially identical to the federal arbitration act at issue in *Garmo*. This argument is without merit.

█ The arbitration provision at issue in *Garmo* applied to "[a]ny controversy . . . arising out of or relating to this contract or the breach thereof . . ." *Garmo,* at 587. By contrast, the arbitration provision at issue here only applies when the parties "don't agree on . . . legal rights to receive damages, or the amount of damages." (Italics omitted.) The scope of this latter provision is narrow, and disputes relating to the insurer's good faith in *handling* the claim, as opposed to disputes regarding the amount or validity of the claim, are not covered by the arbitration provision. *See Mansdorf v. California Physicians' Serv., Inc.,* 87 Cal. App. 3d 412, 151 Cal. Rptr. 388 (1978). Thus, *Garmo* is distinguishable, and the arbitration provision is inapplicable to the claims involved in this action.

█ Sentry also argues that appellants' failure to utilize the arbitration option in the policy during the early stages of their discussions with Sentry precludes any claim of bad faith because an earlier arbitration would have settled the matter prior to much of the alleged bad faith conduct. This argument overlooks (1) the fact that the arbitration provision neither purports to be mandatory nor states that the remedy provided therein is exclusive;[4] and (2) the fact that appellants felt there was no room for legitimate disagreement as to the value of the claim or the right to damages, and therefore felt they had the right to settlement without expensive and time consuming arbitration.[5] We concur with appellants' conclusion that an insured need not invoke an *optional* arbitration provision when a disagreement

---

[4]*See Overland Plumbing, Inc. v. Transamerica Ins. Co.,* 119 Cal. App. 3d 476, 174 Cal. Rptr. 1 (1981) (arbitration provision invocable "on the written demand of either" insured or insurer was held to be optional, and insured was under no duty to invoke the provision).

[5]*See Richardson v. Employers Liab. Assur. Corp.,* 25 Cal. App. 3d 232, 102 Cal. Rptr. 547 (1972) (court implicitly recognizing that insured, in certain circumstances, has right to settlement or payment without arbitration).

arises with the insurer.[6] Unless the policy *requires* arbitration, an insured has the right to continue negotiations in hopes that arbitration can be avoided, and the right to bring a suit for benefits under the policy and/or a suit for bad faith.

### BAD FAITH/UNDERINSURED MOTORIST CLAIM

Appellants next contend the summary judgment cannot be upheld on the basis of a lack of any cause of action for bad faith. Appellants argue that while there are no Washington cases recognizing a cause of action for an insurer's bad faith in handling a claim for underinsured motorist coverage, decisions in other jurisdictions provide persuasive authority for the recognition of such a cause of action in Washington. We agree.

A growing number of jurisdictions recognize a cause of action for an insurer's bad faith in handling an insured's underinsured or uninsured motorist claim. *See generally* 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* §§ 20.1–20.3 (2d ed. 1987) (citing cases); *Richardson v. Employers Liab. Assur. Corp.*, 25 Cal. App. 3d 232, 102 Cal. Rptr. 547 (1972); *Hendren v. Allstate Ins. Co.*, 100 N.M. 504, 672 P.2d 1137 (Ct. App. 1983); *Craft v. Economy Fire & Cas. Co.*, 572 F.2d 565 (7th Cir. 1978); *Palombo v. Broussard*, 370 So. 2d 216 (La. Ct. App. 1979); *Beck v. Farmers Ins. Exch.*, 701 P.2d 795 (Utah 1985). Some courts have held that this cause of action is available to any insured, whether the insured is a named insured who purchased the policy, or an insured by virtue of being covered as a family member, permissive user, passenger, etc. *See Cancino v. Farmers Ins. Group*, 80 Cal. App. 3d 335, 145 Cal. Rptr. 503 (1978) (person insured by virtue of statute requiring uninsured motorist coverage for certain persons

---

[6]In this regard, it should also be noted that no clear dispute existed between the parties until late in the negotiations, and that, up until Sentry's settlement offer on June 20, 1984, Sentry had maintained that it could not enter settlement negotiations with appellants because it had insufficient information to evaluate Nova Jean Brooks' claim.

was entitled to sue for bad faith even though such person was not a named insured or a party to the insurance contract); *Northwestern Mut. Ins. Co. v. Farmers Ins. Group,* 76 Cal. App. 3d 1031, 143 Cal. Rptr. 415 (1978) (permissive user/insured is a third party beneficiary of insurance policy and is entitled to enforce implied covenant of good faith); *cf. Gould v. Mutual Life Ins. Co.,* 37 Wn. App. 756, 683 P.2d 207 (1984) (beneficiary of life insurance policy has cause of action under the Consumer Protection Act for bad faith). We find the above cited authorities persuasive, particularly in light of the fact that the Legislature has required good faith dealing "in all insurance matters", RCW 48.01.030, and in light of the strong public policy underlying underinsured motorist coverage in this state.[7] Therefore, we hold that appellants have a cause of action for Sentry's alleged bad faith in handling their claim for underinsured motorist benefits.[8]

---

[7]Like most jurisdictions, Washington has enacted underinsured motorist statutes expressing a strong public policy favoring full coverage for innocent injured parties. RCW 48.22.030. We believe such a strong public policy demands good faith dealing on the part of insurers. As one authority correctly points out,

[t]he various state insurance laws that establish the requirements for uninsured motorist insurance are clearly intended to benefit all insureds, and the attainment of this goal certainly encompasses requiring the fair and equitable settlement of uninsured motorist insurance claims. Unreasonable conduct by an insurer frustrates the public policy embodied in state's insurance legislation, as well as breaching the implied–in–law duty. Thus, the standard by which the conduct of insurers is judged arguably should be higher in regard to uninsured motorist claims than it is for other first party insurance coverages. In other words, given the fact that uninsured motorist insurance is the subject of statutory requirements in forty–nine states, a persuasive argument can be made for the proposition that the duty of an insurer to act in good faith and fairly should be of the highest order in regard to claims arising under this coverage. The public interest in this coverage means that insurers should be obligated to exercise the greatest care and highest level of good faith and fair dealing.

(Footnote omitted.) 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 20.3 (2d ed. 1987).

[8]In this regard it is important to remember that the Sentry policy afforded passengers "the same rights and obligations" that the named insured, Nova Jean Brooks, had under the policy. Thus, if Sentry owed Nova Jean Brooks a duty of good faith, it also owed that duty to Linda Escalante and appellants.

CONSUMER PROTECTION ACT/STANDING

Appellants next contend summary judgment cannot be upheld on the basis of their alleged lack of standing to bring a claim under the CPA. Appellants cite *Gould v. Mutual Life Ins. Co.*, 37 Wn. App. 756, 683 P.2d 207 (1984) for the proposition that a third party beneficiary under an insurance policy can maintain an action against the insurer for violation of the CPA. They argue that since the policy in the present case gives the same policy rights to passengers and insureds, then covered passengers are akin to either third party beneficiaries or named insureds and are entitled to sue for damages under the CPA.

On the other hand, Sentry argues appellants lacked standing to bring a claim for violation of the CPA because appellants were not parties to the insurance contract, did not pay any premiums, and had no consumer relationship whatsoever with Sentry. We disagree.

Washington decisions construing the scope of the CPA have generally tended toward a liberal interpretation of the act. *See Salois v. Mutual of Omaha Ins. Co.*, 90 Wn.2d 355, 581 P.2d 1349 (1978) (the CPA is not limited to unfair conduct involved in sales); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785, 719 P.2d 531 (1986) (court reaffirming that Legislature intended a broad construction of the terms "trade" and "commerce" as defined in RCW 19.86.010(2)); *see generally* Note, *Consumer Protection: Consumer Relationship*, 15 Gonz. L. Rev. 891 (1980). However, in *Marsh v. General Adj. Bur., Inc.*, 22 Wn. App. 933, 592 P.2d 676 (1979) and *Bowe v. Eaton*, 17 Wn. App. 840, 565 P.2d 826 (1977), Division Three of this court held that a consumer relationship is a prerequisite to standing to maintain a cause of action under the CPA. We decline to follow *Marsh* or *Bowe* for several reasons.

First, since *Salois* and *Hangman Ridge* are decisions of this state's highest court, they control over decisions from the divisions of this court. Second, we disagree with the *Marsh* court's interpretation of *Salois*. The *Marsh*

court concluded that *Salois* stands for the proposition that a consumer relationship is necessary before a plaintiff can bring a CPA action. *Marsh,* at 936–37. However, though the plaintiffs in *Salois* had purchased the policy at issue, and though the *Salois* court's precise holding is that post–sale activities are subject to CPA actions, *Salois,* at 361, the court's reasoning supports a broad interpretation of the act. In particular, the court noted that the act

> declares unlawful unfair or deceptive acts or practices in the conduct of any *trade or commerce.* The words "trade or commerce" are defined in RCW 19.86.010(2) to include "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." *The fact that the definition of those words state that they shall "include" sales must mean that there is encompassed more than just sales.* If the legislature had intended to so limit the act it could have said that it applies only to sales. Not only did it not do so, it went on to include "any commerce directly *or indirectly* affecting the people of the state of Washington."
>
> Taking the broad scope of RCW 19.86.010 and coupling it with RCW 19.86.020's reference to the *conduct* of any trade or commerce, we cannot conclude that the legislature intended the act to be restricted to acts or practices designed to induce a sale.

(Some italics ours.) *Salois,* at 359–60. These observations, together with the express statement that the CPA is to be liberally construed, RCW 19.86.920, convince us that a CPA action is available to appellants in this case. Our conclusion is supported by this court's recent decision in *Gould.*

In *Gould,* this court held that a third party beneficiary of a life insurance policy was owed a direct contractual obligation by the insurance company, and therefore the beneficiary could sue the insurer to enforce contractual obligations, and could sue the insurer for bad faith under the CPA. *Gould,* at 759; *Tank v. State Farm Fire & Cas. Co.,* 105 Wn.2d 381, 395, 715 P.2d 1133 (1986) (interpreting *Gould*). As in the instant case, there was no direct consumer relationship (*i.e.,* sale transaction) between the beneficiary and the insurer in *Gould.* However, the *Gould* court

nevertheless held that "nothing in the language of the [CPA] . . . suggest[s] that a beneficiary of a policy would not also have a cause of action against the insurance company under similar circumstances." *Gould,* at 759. Sentry attempts to distinguish *Gould* by pointing out that the beneficiary in that case was specifically named in the life insurance policy, while in the present case appellants' daughter was not a named beneficiary, but rather was a beneficiary only in the sense that she was a passenger covered by the policy in certain situations. This distinction clearly has nothing to do with whether a direct consumer relationship is a prerequisite to a suit under the CPA. Furthermore, there is no good reason to distinguish between a named beneficiary and an unnamed beneficiary for purposes of determining third party beneficiary status or lack thereof. *See Boise Cascade Corp. v. Pence,* 64 Wn.2d 798, 394 P.2d 359 (1964) (identity of third party beneficiary need not be known at the time a contract is executed). Unnamed insureds such as Linda Escalante are third party beneficiaries of insurance contracts, and are entitled to enforce the insurer's duty to act in good faith. *Northwestern Mut. Ins. Co.,* 143 Cal. Rptr. at 421. Therefore, we hold that since appellants' daughter was an insured and a third party beneficiary by virtue of the policy coverage for passengers, appellants have standing to sue Sentry under the CPA.

## WAC Regulations

Sentry contends appellants' claim for alleged violations of certain regulations in WAC 284–30 is invalid, and therefore summary judgment was proper as to that claim. Sentry argues that no private cause of action exists under these regulations, which were promulgated pursuant to RCW 48.30.010(2), because the remedies provided in RCW 48.30-.010(4) are exclusive.

On the other hand, appellants argue that while a *third party* claimant does not have a cause of action against an insurance company for violations of the regulations, the

same is not true for insureds. Appellants cite *Tank v. State Farm Fire & Cas. Co., supra,* in support of their claim that a violation of the relevant WAC regulations gives rise to a private cause of action.

In *Tank* our State Supreme Court held that the regulations at issue here cannot be enforced by *third party* claimants. *Tank,* at 393–94. However, a careful reading of *Tank* shows that the court's holding is predicated on the fact that the claimants in that case were *third parties,* and as such they had no cause of action whatsoever for an insurer's alleged breach of its duty of good faith. Thus, *Tank* does not answer the question of whether the WAC regulations at issue may be enforced in a private cause of action brought by an insured.

A reading of RCW 48.30.010 and the relevant WAC regulations in isolation suggests that in creating this regulatory scheme the Legislature and the Insurance Commissioner did not intend to provide protection or remedies for individual interests, but rather only intended to create a regulatory mechanism for the Insurance Commissioner. In particular, WAC 284–30–300 states that the regulations (WAC 284–30–300 through 284–30–410) are designed to "define certain minimum standards which, if violated *with such frequency* as to indicate a general business practice, will be deemed to constitute unfair claims settlement practices" (italics ours) and may result in the issuance of fines, orders to cease and desist, or suspension or revocation of an insurer's certificate of authority. *See* RCW 48.30.010; RCW 48.05.140(1); WAC 284–30–400. These regulations appear to be intended to provide standards to guide the Insurance Commissioner in regulating the ongoing conduct of insurance companies. *See Tank,* at 395 ("The goal of the insurance regulations is a well regulated insurance industry."). There is no clearly expressed intent in RCW 48.30.010 or the WAC regulations to provide private causes of action for isolated violations of the regulations. *See Tank v. State Farm Fire & Cas. Co.,* 38 Wn. App. 438, 446, 686 P.2d 1127 (1984), *rev'd in part,* 105 Wn.2d 381, 715 P.2d 1133 (1986);

WAC 284–30–400.

■ However, in RCW 19.86.170 of the CPA the Legislature stated that

> actions and transactions prohibited or regulated under the laws administered by the insurance commissioner *shall be subject to the provisions of RCW 19.86.020 and all sections of chapter 216, Laws of 1961 and chapter 19.86 RCW which provide for the implementation and enforcement of RCW 19.86.020* except that nothing required or permitted to be done pursuant to Title 48 RCW shall be construed to be a violation of RCW 19.86-.020: . . .

Since this statute declares that "actions . . . prohibited *or regulated*" (italics ours) by RCW Title 48 (the insurance code) are subject to RCW 19.86.020 (declaring unfair or deceptive acts or practices unlawful) and all sections of RCW 19.86, and since RCW 19.86.090 clearly creates a private right of action for violations of RCW 19.86.020, it follows that violations of the WAC regulations set forth in WAC 284–30 (which are promulgated pursuant to RCW 48.30.010(2)) create a private cause of action in an insured under the CPA. Therefore, appellants may bring an action for violations of the CPA based on alleged violations of the WAC regulations at issue in this case. *Cf. Rounds v. Union Bankers Ins. Co.,* 22 Wn. App. 613, 590 P.2d 1286 (1979).

### Genuine Issue of Fact

Appellants next contend the trial court erred in granting summary judgment because evidence of Sentry's alleged unjustified delays, spurious tactics to avoid responsibility for payment, refusal to settle, their letter asking appellants to drop their claim, and other acts create genuine issues of fact as to whether Sentry is guilty of bad faith in its handling of the claim.

The question of whether an insurer violated its duty of good faith is a question of fact. *St. Paul Fire & Marine Ins. Co. v. Updegrave,* 33 Wn. App. 653, 657, 656 P.2d 1130 (1983). A review of the record before us indicates that genuine issues of fact may exist regarding appellants' claims of

bad faith, etc. However, as will be seen in the discussion that follows, we are reversing the trial court's denial of the motion to compel and ordering further discovery; therefore, the proper course of action is to remand and grant the parties' leave to again move for summary judgment after completion of discovery.[9]

## DISCOVERY ISSUES

Appellants contend the trial court abused its discretion in denying their motion to compel discovery and in awarding terms because the facts and documents sought were relevant and critical to their action and were discoverable under the rules of civil procedure. On the other hand, Sentry argues that the interrogatories were either overly broad, burdensome or asked for information protected by the work product doctrine and/or the attorney–client privilege.

It is well settled that the trial court is given reasonable discretion in considering objections to interrogatories and in determining whether they must be answered. *Weber v. Biddle,* 72 Wn.2d 22, 431 P.2d 705 (1967); *Teratron Gen. v. Institutional Investors Trust,* 18 Wn. App. 481, 569 P.2d 1198 (1977). Thus, we must determine whether the trial court abused its discretion in denying the motion to compel. In so doing, we first consider Sentry's contention that the trial court did not abuse its discretion in denying the motion to compel because the interrogatories were excessive and overly broad, and thus constituted an abuse of discovery procedures.

Though the record is silent as to the trial court's reasons for denying the motion to compel discovery, the fact that the court imposed terms against appellants' counsel indicates that the court felt the motion was not justified. CR 37(a)(4). Thus, it may be that the court found the interrogatories were overly broad and burdensome. However, after reviewing the record, we have concluded that most of the

---

[9]The parties may also move after discovery for summary judgment as to the claims for emotional distress, the tort of outrage, and any other claim of appellants which is not otherwise disposed of in this opinion.

challenged interrogatories and requests are not overly broad or burdensome, and that the motion to compel was substantially justified. CR 37(a)(4). The few overly broad requests do not justify either the imposition of terms, or the complete preclusion of discovery. *See Reygo Pac. Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir. 1982).

With respect to Sentry's other objections to the discovery requests, we conclude after reviewing the individual interrogatories and requests that, for the most part, the objections are either meritless or require further proceedings in the trial court. Therefore, for the reasons stated above and in the discussion that follows, we hold that the trial court abused its discretion in imposing terms and in denying the motion to compel.

### Interrogatories 26, 70, and 72

Interrogatory 26 requests information relating to the value of appellants' claim for the wrongful death of Christine Escalante. Specifically, the interrogatory asks Sentry for (1) the amount which Sentry believes will compensate appellants for Christine's death, (2) the identity of all Sentry employees involved in such evaluation and (3) identification of all documents supporting or documenting this evaluation. Sentry objected to this interrogatory as irrelevant because entitlement to compensation has been determined by arbitration.

Sentry's objection has merit to the extent that the interrogatory appears to request Sentry's *current* evaluation of the claim. However, since this interrogatory was initially propounded prior to arbitration, it should have been clear to Sentry that the request was seeking information regarding Sentry's evaluation of the claim *prior to arbitration.* Viewed in this context, the relevancy objection is meritless since the dollar amount of Sentry's previous evaluations and the documents supporting those evaluations are clearly relevant to a bad faith action based on an allegation that there never was a good faith dispute as to the dollar

amount of the claim.[10]

Likewise, the fact that entitlement to compensation was determined in the arbitration provides no basis for objecting to the interrogatory quoted above because that fact has nothing to do with whether Sentry is guilty of bad faith in handling the claim.

Interrogatories 70 and 72 generally request information and materials relating to Sentry's evaluation of appellants' claim. Sentry objected to these interrogatories on the basis of the attorney–client privilege and the work product doctrine. Appellants argue that the objection is groundless because (1) Sentry's answers to the interrogatories gave the names of four nonattorney employees; and (2) the interrogatories did not seek any mental impressions, or material prepared in anticipation of litigation. Appellants also argue that the attorney–client privilege and the work product doctrine do not protect information relevant to a bad faith claim.

The attorney–client privilege, codified in former RCW 5.60.060(2), provided:

> An attorney or counselor shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment.

In general, this privilege protects confidential attorney client communications from discovery or public disclosure so that clients will not hesitate to speak freely and fully inform their attorneys of all relevant facts. *Coburn v. Seda*, 101 Wn.2d 270, 274, 677 P.2d 173 (1984). The privilege is subject to exceptions, however, and "must be strictly limited to the purpose for which it exists." *Dike v. Dike*, 75 Wn.2d 1, 11, 448 P.2d 490 (1968). In this regard, appellants argued below and in their appellate brief that an exception

---

[10]In general, the relevancy objections raised by Sentry with respect to this and other discovery requests are meritless because the very nature of most bad faith actions makes most, if not all, of the insurer's claim file relevant. *In re Bergeson*, 112 F.R.D. 692 (D. Mont. 1986); *Brown v. Superior Court*, 137 Ariz. 327, 670 P.2d 725 (1983).

to the attorney–client privilege applies in bad faith litigation. That exception, which is referred to variously as the "fraud" or "civil fraud" exception, has been utilized in several insurance bad faith decisions outside of this jurisdiction, and is based on the recognition that attorney–client communications should not be protected when they pertain to ongoing or future fraudulent conduct by the insurer. *See, e.g., United Servs. Auto. Ass'n v. Werley,* 526 P.2d 28 (Alaska 1974); *In re Bergeson,* 112 F.R.D. 692 (D. Mont. 1986); *Silva v. Fire Ins. Exch.* 112 F.R.D. 699 (D. Mont. 1986). The exception is usually invoked only upon a prima facie showing of bad faith tantamount to civil fraud. *See United Servs. Auto. Ass'n v. Werley, supra.* However, recognizing the proof problems inherent in requiring a prima facie showing at the discovery stage, the Supreme Court of Colorado held in *Caldwell v. District Court,* 644 P.2d 26 (Colo. 1982) that the privilege may be overcome by a showing of a foundation in fact for the charge of civil fraud. *Caldwell,* at 33. The *Caldwell* court also held that the "foundation in fact" showing could be accomplished after an in camera inspection of the relevant documents. However, the in camera inspection would itself be a matter of trial court discretion requiring a factual showing "adequate to support a good faith belief by a reasonable person that wrongful conduct sufficient to invoke the . . . fraud exception . . . has occurred." *Caldwell,* at 33. We find this procedure to be a reasonable solution to the discovery problems associated with the attorney–client privilege in bad faith litigation. Therefore, we adopt the reasoning of the *Caldwell* court and remand all interrogatories to which Sentry objected on the basis of the attorney–client privilege. On remand, the trial court, in its discretion, may conduct an in camera inspection of the requested documents. The court will then determine whether the attorney–client privilege applies to particular discovery requests, and whether appellants have overcome that privilege by showing a foundation in fact for the charge of civil fraud.

With respect to the work product rule, CR 26(b)(3)

states:

> (3) *Trial Preparation: Materials.* Subject to the provisions of subsection (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subsection (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

In applying this rule, courts have noted there is no work product immunity for documents prepared in the regular course of business, as opposed to documents prepared in anticipation of litigation. *See Heidebrink v. Moriwaki,* 104 Wn.2d 392, 706 P.2d 212 (1985); 8 C. Wright & A. Miller, *Federal Practice* §§ 2017, 2021–28, at 198–99 (1970). The application of the words "in anticipation of litigation" in the context of materials prepared by insurance companies was discussed recently in *Heidebrink v. Moriwaki,* 104 Wn.2d 392, 706 P.2d 212 (1985). The *Heidebrink* court stated at pages 399–400:

> It is difficult in this context to determine whether a document was prepared in anticipation of litigation since an insurance company's ordinary course of business entails litigation. The requirement of having an attorney involved in the case before documents prepared by an insurance carrier are protected is a rather conclusory determination of the issue and is contrary to the plain language of the rule. On the other hand, broad protection for all investigations conducted by an insurer as suggested by several cases cited by respondents is likewise an unsatisfactory answer to the problem. Should such a rule of thumb approach become the general rule, it is not hard to imagine insurers mechanically forming their

practices so as to make all documents appear to be prepared in "anticipation of litigation". We believe the better approach to the problem is to look to the specific parties involved and the expectations of those parties. With these parties in mind, the scope of CR 26(b)(3) should provide protection when such protection comports with the underlying rationale of the rule to allow broad discovery, while maintaining certain restraints on bad faith, irrelevant and privileged inquiries in order to ensure just and fair resolutions of disputes.

Thus, under *Heidebrink,* Washington courts are required to evaluate the specific parties and their expectations in order to determine whether the materials sought were prepared in anticipation of litigation. *Heidebrink* also clearly states that even if a particular object of discovery is found to be protected by the work product doctrine, the material sought is still discoverable if the discovering party shows substantial need. *Heidebrink,* at 401. Since a determination of the parties' "expectations" is presumably, in part, a factual inquiry, and since the "substantial need" test is essentially a *factual* determination "vested in the sound discretion of the trial judge", *Heidebrink,* at 401, we must remand all discovery requests to which Sentry objected on the basis of work product for the trial court to determine which documents are subject to the work product doctrine, and to determine whether substantial need has been shown.[11]

However, we must address one other issue raised by the parties regarding the work product doctrine, *i.e.,* the discoverability, under CR 26(b(3), of mental impressions, conclusions, opinions, etc., of an attorney or other representative of Sentry. Appellants cite *Brown v. Superior Court,* 137 Ariz. 327, 670 P.2d 725 (1983) for the proposition that CR 26(b)(3) does not protect mental impressions, etc., when the action involves an insurer's bad faith in han-

---

[11]We note that, in general, the nature of the issues in this type of action automatically establishes substantial need for discovery of certain materials in an insurer's claims files. *Brown v. Superior Court,* 137 Ariz. 327, 670 P.2d 725, 734 (1983).

dling an insured's claim. On the other hand, Sentry argues that CR 26(b)(3) provides absolute protection for mental impressions, etc., of an attorney or other representative of the insurer regardless of whether bad faith is alleged.

Initially, we note that the mental impressions, etc., of an attorney or representative of a party are not protected by the work product doctrine if they are not prepared in anticipation of litigation, but generally are protected if they are prepared in anticipation of litigation. The question before us is whether such mental impressions, etc., are *absolutely* protected when they are prepared in anticipation of litigation. This question is one of first impression in Washington, and one which has resulted in a split of authority among other courts. *See Brown,* at 735 (citing cases).

Some courts have found absolute protection for mental impressions, etc., because CR 26(b)(3) states that "the court *shall* protect" such impressions from disclosure. (Italics ours.) *Brown,* 670 P.2d at 735. Other courts have held that when mental impressions and the like are directly at issue in a case, an exception to the strict protection of CR 26(b)(3) should be permitted. *Brown,* 670 P.2d at 735 (citing federal cases); 4 J. Moore, *Federal Practice* § 26.64[3.–2] (1986) (citing federal cases); *Byers v. Burleson,* 100 F.R.D. 436 (D.D.C. 1983).

█ Given the unique nature of bad faith actions, and considering the protection available in the form of in camera inspections, we hold that mental impressions, etc., are discoverable in a bad faith action if they are directly in issue, and if the discovering party makes a stronger showing of necessity and hardship than is normally required under CR 26. *See Upjohn Co. v. United States,* 449 U.S. 383, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981) (Court declining to hold that such material is always protected by the work product rule, and implying that a stronger showing of necessity and unavailability would be required for disclosure).

The remainder of this opinion has no precedential value.

398

Therefore, it will be filed for public record pursuant to RCW 2.06.040.

DORE and HOLMAN, JJ. Pro Tem., concur.

Review denied by Supreme Court January 5, 1988.