52 Wn. App. 548 (1988)
761 P.2d 964
EVERGREEN INTERNATIONAL, INC., ET AL, Respondents,
v.
AMERICAN CASUALTY COMPANY OF READING, PA., Appellant.
No. 20001-1-I.
The Court of Appeals of Washington, Division One.
September 6, 1988.
John Patrick Cook, Duncan K. Fobes, and Lee, Smart, Cook, Martin & Patterson, P.S., for appellant.
William R. Hickman and Reed, McClure, Moceri, Thonn & Moriarty, for respondents.
THOMPSON, J.
American Casualty Company (hereafter CNA)[1] appeals that portion of a judgment which awarded its insured, Evergreen International, Inc., attorney fees and costs under the Consumer Protection Act, RCW 19.86 (CPA). Evergreen based its CPA action on CNA's alleged *550 bad faith and failure to comply with Washington Administrative Code provisions in handling Evergreen's insurance claim. We affirm the superior court's award of attorney fees, but we remand the cause for recalculation of the award for costs.
William and Carol Hoagland were the sole shareholders of Evergreen, an International Harvester truck dealership in Mt. Vernon. On September 3, 1984, a fire caused extensive damage to Evergreen's building and its contents.
In early 1984, Mr. Hoagland had purchased business insurance from CNA. The policy included $500,000 coverage for the building, with a 90 percent coinsurance clause, $400,000 for its contents; $180,000 for business interruption; and $50,000 for extra expense coverage. In their brief on appeal, the Hoaglands summarize trial testimony concerning the effect of the coinsurance clause:
A 90% coinsurance clause means that the insured agrees that the amount of coverage purchased (in this case $500,000) is equal to at least 90% of the replacement cost value of the building insured. If not, at the time of a loss, the insured will become a "coinsurer" of the loss. For instance, if $500,000 were only 80% of the actual replacement cost value of the building, the insured would be underinsured by 10% and would become a 10% coinsurer for the amount of any loss. In that hypothetical, if the amount of damage sustained as a result of a fire were $50,000, the insured would be paid $45,000 by the insurance company, and would be responsible for the remaining 10% of the loss. The purpose of the penalty is to penalize an insured who tries to save money by buying less than full coverage, realizing that the vast majority of losses are small and will be more than adequately covered by the chosen limits.
Before binding coverage, the CNA underwriting department completed a company insurance to value check and concluded that the $500,000 coverage requested for the building was 100 percent or more of the actual replacement cost value of the building.
After the fire, Mr. Hoagland notified CNA of the loss. He planned to purchase other real property and relocate the *551 business. CNA assured him that settlement would be prompt. However, delays plagued resolution of the Hoaglands' claim. Finally, they brought this action against CNA in August 1985, alleging breach of contract, bad faith, negligence, violation of the Consumer Protection Act, and outrage. The Hoaglands contended because CNA failed to settle promptly, they were not able to rebuild and consequently lost their dealership.
The Hoaglands specifically complained that CNA raised an issue regarding the coinsurance clause more than 3 months after the fire, based upon an appraisal of the destroyed building that CNA refused to give to the Hoaglands. The appraisal followed a preliminary check on value run by CNA which was later found to contain a critical mathematical error. According to the appraisal, the building was substantially underinsured, thus making the Hoaglands coinsurers under the coinsurance clause. In January 1985, CNA stopped its monthly "business interruption" payment to the Hoaglands. CNA's explanation was that it did not want "to get beyond where there would be any kind of a possibility that we would spend more than the coverage that we had available". At the time payments were stopped, CNA had paid far less than the $180,000 limit for that coverage. When the Hoaglands questioned CNA's rationale, the Seattle claims manager indicated CNA wanted to wait to settle the entire claim at once.
At trial, the jury was not instructed regarding the Hoaglands' claim for violation of the CPA, but it was advised that the Hoaglands alleged CNA had violated its duty of good faith under RCW 48.01.030[2] in delaying payment of the claim. The jury instructions also included the following, based on WAC 284-30-330.
*552 Instruction 21A:
Regulations promulgated by the Washington State Insurance Commissioner define the following as unfair or deceptive acts or practices in the business of insurance:
1. Failing to act reasonably promptly upon communications with respect to claims arising under insurance policies.
2. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.
3. Compelling insureds to instigate litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.
4. Delaying the investigation of a payment of claims by requiring an insured to submit a preliminary claim report and then requiring subsequent submissions which contain substantially the same information.
5. Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.
The jury returned a special verdict finding CNA (1) failed to exercise good faith in handling the Hoaglands' insurance claims, (2) intentionally or recklessly inflicted severe emotional distress upon the Hoaglands, and (3) breached the insurance contract. It awarded the Hoaglands damages of $380,848.87.
After the verdict was returned, the trial court granted the Hoaglands' motion for an award of costs and attorney fees. The court determined CNA had violated the CPA, based on the jury's finding that CNA had failed to exercise good faith, and that the Hoaglands were entitled to their costs and attorney fees under the act as a matter of law.
In calculating attorney fees, the court did not limit the award to the amount agreed to between the Hoaglands and their attorney. The fee agreement provided for a contingent fee of 33 1/3 percent of the gross sums recovered, whether by settlement or trial, reduced by the total hourly maintenance fee billed and paid by the Hoaglands. The hourly fee *553 was to be 50 percent of the normal hourly rates charged by the individual attorneys rendering the service. The court instead based the award on what it determined were reasonable hours and rates under the lodestar formula in Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 675 P.2d 193 (1983). It calculated a lodestar amount of $281,730, reduced by previous sanctions paid by CNA of $56,023, for a total of $225,707, and refused to increase the award for quality of work or the contingent nature of the case. Posttrial attorney fees of $12,214, 50 percent of the amount requested, were also added to the judgment.
In assessing costs, the court declined to confine its award to statutory costs as set forth in RCW 4.84.010.[3] However, it reduced the amount requested by the Hoaglands by 50 percent, resulting in an award of $50,526.
CNA appealed, later stipulating the issues on appeal would be limited to the question of whether the court properly found a CPA violation, and the proper amount of fees and costs.
In Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986), the court held that to prevail in an action brought under RCW *554 19.86.090[4] of the CPA, a plaintiff must establish the existence of five distinct elements: (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) which impacts the public interest; (4) injury to the plaintiff in his or her business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered. CNA agrees that the jury's finding it acted in bad faith satisfies the public interest element per se because the Legislature in RCW 48.01.030 specifically declared that bad faith by insurers impacts the public interest. See Hangman Ridge, at 791. However, CNA contends this finding is not sufficient to establish the first element cited in Hangman Ridge, i.e., that its conduct constituted an unfair or deceptive act or practice.
Under Hangman Ridge, at 791-92:
[W]hen a statute containing a legislative public interest pronouncement can be shown to have been violated, only the public interest requirement is satisfied per se. The other four elements of a private CPA action must be separately established.
See generally Note, New Consumer Protection Private Action Test: Clarification or Further Confusion?, 62 Wash. L. Rev. 277 (1987). "A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." Hangman Ridge, at 786.
Here, the jury was instructed that regulations of the Washington State Insurance Commissioner defined certain *555 conduct by insurers as unfair or deceptive acts or practices. The instruction was given in the language of former WAC 284-30-330,[5] which stated:
The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:
...
(2) Failing to ... act reasonably promptly upon communications with respect to claims arising under insurance policies.
...
(6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.
(7) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.
...
(11) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring subsequent submissions which contain substantially the same information.
(12) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.
The conduct which the Hoaglands alleged CNA committed matched the description of the conduct prohibited in the regulation. At issue is whether proof of a single violation of the regulation meets Hangman Ridge's requirement for establishing a per se unfair trade practice.
CNA argues such proof does not satisfy the requirement. It relies on WAC 284-30-300, which states the purpose of WAC 284-30-300 through XXX-XX-XXX "is to define certain minimum standards which, if violated with such frequency *556 as to indicate a general business practice, will be deemed to constitute unfair claims settlement practices." (Italics ours.) While CNA proposed an instruction incorporating this language, the court refused to give it.
The Supreme Court has twice declined to decide whether a single violation of WAC 284-30-330 amounts to a violation of RCW 48.30.010(1),[6] and is thereby a per se unfair trade practice. See Villella v. Public Employees Mut. Ins. Co., 106 Wn.2d 806, 820, 725 P.2d 957 (1986); Federated Am. Ins. Co. v. Strong, 102 Wn.2d 665, 676, 689 P.2d 68 (1984).[7] In each case the court found it unnecessary to decide the issue. However, Escalante v. Sentry Ins. Co., 49 Wn. App. 375, 743 P.2d 832 (1987), review denied, 109 Wn.2d 1025 (1988) squarely addressed this question, deciding that an action may be brought for violation of the CPA based on isolated violations of the Insurance Commissioner's Washington Administrative Code regulations. The court reasoned:

*557 A reading of RCW 48.30.010 and the relevant WAC regulations in isolation suggests that in creating this regulatory scheme the Legislature and the Insurance Commissioner did not intend to provide protection or remedies for individual interests, but rather only intended to create a regulatory mechanism for the Insurance Commissioner. In particular, WAC 284-30-300 states that the regulations (WAC 284-30-300 through XXX-XX-XXX) are designed to "define certain minimum standards which, if violated with such frequency as to indicate a general business practice, will be deemed to constitute unfair claims settlement practices" (italics ours) and may result in the issuance of fines, orders to cease and desist, or suspension or revocation of an insurer's certificate of authority. See RCW 48.30.010; RCW 48.05.140(1); WAC 284-30-400. These regulations appear to be intended to provide standards to guide the Insurance Commissioner in regulating the ongoing conduct of insurance companies.... There is no clearly expressed intent in RCW 48.30.010 or the WAC regulations to provide private causes of action for isolated violations of the regulations.
However, in RCW 19.86.170 of the CPA the Legislature stated that
actions and transactions prohibited or regulated under the laws administered by the insurance commissioner shall be subject to the provisions of RCW 19.86.020 and all sections of chapter 216, Laws of 1961 and chapter 19.86 RCW which provide for the implementation and enforcement of RCW 19.86.020 except that nothing required or permitted to be done pursuant to Title 48 RCW shall be construed to be a violation of RCW 19.86.020: ...
Since this statute declares that "actions ... prohibited or regulated" (italics ours) by RCW Title 48 (the insurance code) are subject to RCW 19.86.020 (declaring unfair or deceptive acts or practices unlawful) and all sections of RCW 19.86, and since RCW 19.86.090 clearly creates a private right of action for violations of RCW 19.86.020, it follows that violations of the WAC regulations set forth in WAC 284-30 (which are promulgated pursuant to RCW 48.30.010(2)) create a private cause of action in an insured under the CPA. Therefore, appellants may bring an action for violations of the CPA based *558 on alleged violations of the WAC regulations at issue in this case.
(Citations omitted.) Escalante, at 389-90.
[1] We are persuaded by Escalante's analysis. The requirement of frequency of violation does not mean that an act is not unfair or deceptive if proven to have been committed against only one insured. The goals served by the Insurance Commissioner's enforcement of the regulations differ from those served under the CPA. The Insurance Commissioner's aim is a well regulated insurance industry. Tank v. State Farm Fire & Cas. Co., 105 Wn.2d 381, 395, 715 P.2d 1133 (1986). Treating isolated unfair acts differently from frequent violations is consistent with the Insurance Commissioner's purpose. On the other hand, the CPA is designed to protect the public and foster fair and honest competition, and is to be liberally construed to serve that end. RCW 19.86.920.[8] Private disputes are actionable under the CPA. RCW 19.86.090. We conclude an isolated unfair or deceptive act which meets the description of prohibited conduct as contained in WAC 284-30-330 constitutes a per se unfair trade practice under the rules of Hangman Ridge.
Nevertheless, CNA argues the jury's special finding that it failed to exercise good faith is not a finding that it violated WAC 284-30-330, as set forth in instruction 21A. According to CNA, the special finding was based on the instructions defining good faith, which in turn were based on RCW 48.01.030. As noted above, that statute imposes an obligation of good faith on insurers but does not specifically state that its violation amounts to an unfair or deceptive act or practice.
A reading of the instructions in their entirety belies CNA's argument. The good faith instructions advised the *559 jury that an insurance company must give equal consideration to the insured's interests and that if it delays payment on a claim, it must do so on reasonable grounds. Instruction 21A lists acts which constitute unequal consideration or unreasonable delay and labels them unfair or deceptive. We conclude the instructions are interrelated, and we reject CNA's attempt to single out the good faith instructions as the sole basis for the jury's special finding.
Accordingly, we hold the jury's special finding that CNA failed to exercise good faith in handling the Hoaglands' insurance claim, based upon proof CNA violated WAC 284-30-330, supports the court's determination of a per se unfair act or practice under the CPA.
The second issue is whether the court should have limited attorney fees to the amount agreed to by the Hoaglands and their counsel in the fee agreement.
CNA does not dispute the finding by the trial court regarding the reasonableness of hours expended and rates charged by the Hoaglands' attorneys. Nevertheless, it argues that where reasonable, only the actual fees owed by the Hoaglands under their fee agreement should be awarded, even if that sum is substantially less than the "lodestar" figure computed under Bowers v. Transamerica Title Ins. Co., supra.
[2] A reading of Bowers indicates the majority there would not view a contingent fee agreement between a successful plaintiff and his attorney as an outside limit to an award of reasonable fees under the statute. Justice Dore, in partial dissent, noted plaintiff's attorneys took the case on a one-third contingent fee agreement, and that the amount of the contingency was substantially less than the fees awarded by the majority in Bowers. Bowers, at 603 (Dore, J., concurring in part, dissenting in part). The Bowers majority rejected the formula in Johnson v. Georgia Hwy. Express, Inc., 488 F.2d 714 (5th Cir.1974), relied on here by CNA, in favor of the approach utilized in Lindy Bros. *560 Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir.1973).[9]
Under Lindy, there are two principal steps in computing an award of reasonable attorney fees. First, the court determines a lodestar figure by multiplying a reasonable hourly rate by the number of hours reasonably expended on the lawsuit. Second, the lodestar may be adjusted up or down to reflect certain factors, such as the contingent nature of success or the quality of legal representation which have not already been factored into the lodestar figure and which justify an adjustment.
Other federal courts also have rejected a contractual cap on fees in cases interpreting statutory reasonable attorney fee provisions similar to that contained in the CPA. For example, in Cooper v. Singer, 719 F.2d 1496, 1502 (10th Cir.1983), the court rejected a contractual outer limit on attorney fee awards pursuant to 42 U.S.C. § 1988. The court explained to do so would subvert the purpose of such fee awards which were intended by Congress to remove economic barriers blocking the courthouse doors to meritorious claims.[10]Cooper, 719 F.2d at 1498. In Hasbrouck v. Texaco, Inc., 631 F. Supp. 258, 263 (E.D. Wash. 1986), the court refused to limit an attorney fee award by the parties' contingent fee agreement, because to do so would not compensate plaintiff's attorney in a reasonable amount.
Here, the court properly applied the Bowers lodestar criteria. While it considered the contingent fee agreement, it correctly refused to limit the attorney fee award to the original contractual amount.
*561 Finally, CNA contends the court erred when it included in its award of costs items not recoverable as statutory costs under RCW 4.84.010. We agree.
[3] The Supreme Court has held: "it gives the plaintiff in a Consumer Protection Act action an unwarranted recovery to extend costs beyond those statutorily defined in RCW 4.84.010". Nordstrom, Inc. v. Tampourlos, 107 Wn.2d 735, 743, 733 P.2d 208 (1987). See also Boeing Co. v. Sierracin Corp., 108 Wn.2d 38, 66, 738 P.2d 665 (1987). The decision in Nordstrom mandates that we reverse the amount awarded as costs and remand for recalculation based on the items set forth in RCW 4.84.010.
The judgment of the Superior Court is affirmed with the exception of the costs award, which we reverse and remand for recalculation in accordance with the authority set forth in this opinion. On remand, the court shall also determine and award the Hoaglands their reasonable attorney fees on appeal. Bowers, at 601-02; Richter v. Trimberger, 50 Wn. App. 780, 786, 750 P.2d 1279 (1988).
SWANSON, J., and WILLIAMS, J. Pro Tem., concur.
NOTES
[1] American Casualty Company of Reading, Pennsylvania, is a division of CNA Insurance Companies. It was referred to throughout the proceedings as CNA.
[2] RCW 48.01.030 provides:

"The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, and their representatives rests the duty of preserving inviolate the integrity of insurance."
[3] RCW 4.84.010 states: "[T]here shall be allowed to the prevailing party upon the judgment certain sums by way of indemnity for the prevailing party's expenses in the action, which allowances are termed costs, including, in addition to costs otherwise authorized by law, the following expenses:

"(1) Filing fees;
"(2) Fees for the service of process;
"(3) Fees for service by publication;
"(4) Notary fees, but only to the extent the fees are for services that are expressly required by law and only to the extent they represent actual costs incurred by the prevailing party;
"(5) Reasonable expenses, exclusive of attorneys' fees, incurred in obtaining reports and records, which are admitted into evidence at trial or in mandatory arbitration in superior or district court, ...
"(6) Statutory attorney and witness fees; and
"(7) To the extent that the court or arbitrator finds that it was necessary to achieve the successful result, the reasonable expense of the transcription of depositions used at trial or at the mandatory arbitration hearing: ..."
[4] RCW 19.86.090 read:

"Any person who is injured in his business or property by a violation of RCW 19.86.020, 19.86.030, 19.86.040, 19.86.050, or 19.86.060 ... may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him, or both, together with the costs of the suit, including a reasonable attorney's fee, and the court may in its discretion, increase the award of damages to an amount not to exceed three times the actual damages sustained: Provided, That such increased damage award for violation of RCW 19.86.020 may not exceed ten thousand dollars: ..."
This statute was amended by Laws of 1987, ch. 202 § 187. The changes are not material to the Hoaglands' action.
[5] WAC 284-30-330 was amended in 1987. The changes were not material as to the Hoaglands' cause of action. In any event, their action was subject to the 1986 version of the WAC provision.
[6] RCW 48.30.010 provides:

"(1) No person engaged in the business of insurance shall engage in unfair methods of competition or in unfair or deceptive acts or practices in the conduct of such business as such methods, acts, or practices are defined pursuant to subsection (2) of this section.
"(2) In addition to such unfair methods and unfair or deceptive acts or practices as are expressly defined and prohibited by this code, the commissioner may from time to time by regulation promulgated pursuant to chapter 34.04 RCW, define other methods of competition and other acts and practices in the conduct of such business reasonably found by the commissioner to be unfair or deceptive."
[7] See also Mutual of Enumclaw Ins. Co. v. Cox, 110 Wn.2d 643, 757 P.2d 499 (1988), in which the court held the insured's fraud precluded his recovery for damages for the insurer's CPA violation based on its bad faith and failure to comply with Washington Administrative Code provisions. The opinion notes:

[L]egal mechanisms exist to punish insurers guilty of CPA violations since insurers are subject to the enforcement powers of the State Insurance Commissioner. We consider this regulation by the Insurance Commissioner to be an adequate deterrence against bad faith by insurance companies. We need not further punish [the insurer] when to do so would provide a windfall to one guilty of fraud.
Cox, at 652. Fraud on the part of the insured is not an issue here and distinguishes the facts of this case from those of Cox.
[8] RCW 19.86.920 states:

"The legislature hereby declares that the purpose of this act is to complement the body of federal law ... in order to protect the public and foster fair and honest competition.... To this end this act shall be liberally construed that its beneficial purposes may be served."
[9] Justice Dimmick, in her dissent, stated a preference for Johnson's formula, arguing the lodestar method could produce a windfall for the attorney, the same argument put forth by CNA.
[10] Analogous reasoning was used in Blair v. WSU, 108 Wn.2d 558, 570-71, 740 P.2d 1379 (1987) wherein the court held an attorney's pro bono publico status did not prevent an award of attorney fees under the State's law against discrimination, RCW 49.60.030(2), even though the client would not owe any fees absent a statutory award by the court.