[No. 17821-8-III.   Division Three.   December 9, 1999.]
DENISSE BARRY, *Petitioner,* v. USAA, *Respondent.*

---

Rayners' claims in the context of RCW 4.28.328. The Pages' argument is therefore without merit.

*Mark D. Kamitomo*, for petitioner.

*Paul L. Kirkpatrick* of *Leveque & Kirkpatrick,* for respondent

SCHULTHEIS, C.J. — When an insured sues an insurer for bad faith, how much of the insured's claims file is discoverable? Denisse Barry filed a complaint for damages against her carrier, USAA Insurance Company, alleging bad faith insurance practices and violations of the Consumer Protection Act (CPA). USAA's refusal to honor Ms. Barry's request for production of her claims file and other documents was upheld by the trial court and we granted discretionary review. We reverse and remand.

In June 1995 Ms. Barry was injured in an automobile accident that left her with a broken sternum, broken ribs and a broken wrist. The tortfeasor's insurance company paid its policy limits of $50,000. Ten to twelve months after the accident, Ms. Barry made a claim for underinsured motorist (UIM) benefits through USAA and invoked arbitration.

Three to five months later, in September 1996, Ms. Barry's counsel wrote to USAA and requested a schedule for the arbitration. This letter was followed by four more, from early October 1996 through late January 1997, each asking USAA to set an arbitration date and expressing Ms. Barry's growing frustration with her insurance carrier. USAA's responses, if any, are not contained in the record. In a letter dated January 30, 1997, Ms. Barry's counsel explained that she refused to allow deposition of a particular doctor and to submit to further medical testing. He stated that because his client had offered to cooperate with both the deposition and the testing months earlier, and USAA had failed to follow up, it was too late to pursue this discovery now. Concluding that USAA was not acting in good faith "with respect to an expeditious and fair resolution of Ms. Barry's claim," counsel gave notice that he would be serving a complaint for bad faith on the insur-

ance commissioner. Again in February 1997, Ms. Barry's counsel wrote to say that she did not agree to deposition of the doctor or to additional testing.

On March 17, 1997, Ms. Barry's counsel rejected an offer from USAA for $25,000 and reiterated that she was entitled to the $100,000 policy limit for UIM benefits. He then described his client as upset with the manner she had been treated by her insurance company. As a result, he notified USAA, she was filing a claim of bad faith and would be seeking production of her claims file and USAA's claims manual. Her complaint for insurance bad faith and consumer protection violations was filed on March 20, 1997. Besides damages, she requested an order to submit to arbitration. USAA apparently offered Ms. Barry $40,000 in early April and increased the offer to $65,000 in mid-April. (These offers are not contained in the record but their existence is not disputed by USAA and the trial court found that the final offer was "over $62,000.") On April 17, 1997, the arbitration panel awarded Ms. Barry $128,078. Due to offsets on that amount from the $50,000 and other amounts Ms. Barry had already received, USAA was obliged to pay her only $62,612.

In July 1997 Ms. Barry's counsel sent a letter to USAA asking for the documents requested in discovery, including the reports from the claim adjuster and correspondence from the attorney who handled the UIM claim. When the documents were not forthcoming, she moved in November to compel answers to the interrogatories and to request production. USAA's response to the motion was filed seven months later. The trial court, citing *Escalante v. Sentry Insurance Co.*, 49 Wn. App. 375, 743 P.2d 832 (1987), *review denied*, 109 Wn.2d 1025 (1988), found that Ms. Barry did not need to establish a prima facie case of civil fraud in order to compel production of the privileged documents. Finding that the claims file was relevant to Ms. Barry's complaint of bad faith, the court ordered USAA to submit the file for in camera inspection. USAA moved for reconsideration and in July 1998 the court granted the motion. In do-

ing so, the court refused to inspect the claims file and concluded that Ms. Barry had failed to establish sufficient wrongful conduct to invoke the fraud exception to the attorney-client privilege.

One week after the order granting the motion to reconsider was filed, Ms. Barry moved to reconsider the order. Her motion was denied and she sought discretionary review by this court. The commissioner accepted review, finding that the trial court committed probable error in light of *Escalante*, 49 Wn. App. at 395-97, and *Heidebrink v. Moriwaki*, 104 Wn.2d 392, 399, 706 P.2d 212 (1985).

USAA first contends this appeal is untimely and should be dismissed. The trial court's order granting USAA's motion for reconsideration was filed July 24, 1998. Rather than seek appellate review of that decision, Ms. Barry chose to move the trial court for reconsideration of the July 24 order. She timely filed the motion, the trial court denied it on August 28, and she timely sought discretionary review on September 8. USAA contends there is no authority in the court rules for Ms. Barry's motion for reconsideration, and that this court should refuse to recognize the unauthorized motion. In effect, USAA is arguing that only one motion for reconsideration per case is contemplated in CR 59.

■ Nothing in CR 59 leads this court to declare a one-reconsideration limit for trial court decisions. The rule specifically limits certain motions in CR 59(j). There the rule declares that if a motion for reconsideration is made and heard before the entry of judgment, no further motion may be made for a new trial, for reopening judgment, to alter or amend the judgment, or to amend the findings "without leave of court first obtained for good cause shown." CR 59(j). Ms. Barry's motion for reconsideration does not come under any of the above classifications and was at any rate considered by the trial court without challenge.

■ Accordingly, we turn to Ms. Barry's first contention— that the trial court erred in refusing to view in camera the claims file to determine whether the documents protected

by the attorney-client privilege were discoverable. We review a trial court's discovery order for abuse of discretion. *Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 777, 819 P.2d 370 (1991); *Escalante*, 49 Wn. App. at 391. Ms. Barry argues the trial court misinterpreted the standards for discovery of privileged information and as a result failed to exercise its discretion. She specifically contends the court erred in finding that she failed to show wrongful conduct sufficient to invoke the civil fraud exception to the attorney-client privilege.

One of the fundamental principles of discovery is that a party may obtain discovery of any relevant matter that is not privileged. CR 26(b)(1); *Puget Sound*, 117 Wn.2d at 777. The attorney-client privilege, codified in RCW 5.60.060, protects confidential attorney-client communications from discovery so clients will not hesitate to fully inform their attorneys of all relevant facts. *Escalante*, 49 Wn. App. at 393 (citing *Coburn v. Seda*, 101 Wn.2d 270, 274, 677 P.2d 173 (1984)). We first ask whether any of the materials in Ms. Barry's claims file would be privileged.

Typically in the insured-insurer relationship, the attorney is engaged and paid by the carrier to defend the insured and therefore operates on behalf of two clients. *Baker v. CNA Ins. Co.*, 123 F.R.D. 322, 326 (D. Mont. 1988). According to *Baker*, 123 F.D.R. at 326, it is a well-established principle in bad faith actions brought by an insured against an insurer under the terms of an insurance contract that communications between the insurer and the attorney are not privileged with respect to the insured. *See also Silva v. Fire Ins. Exch.*, 112 F.R.D. 699 (D. Mont. 1986), *cited in Escalante*, 49 Wn. App. at 394. As explained in *Silva*, 112 F.R.D. at 699-700, "The time-worn claims of work product and attorney-client privilege cannot be invoked to the insurance company's benefit where the only issue in the case is whether the company breached its duty of good faith in processing the insured's claim."

█ We have good reason to treat first-party bad faith claims involving the processing of UIM claims differently,

however. UIM carriers stand in the shoes of the underinsured motorist/tortfeasor to the extent of the carrier's policy limits. *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 281, 876 P.2d 896 (1994). Consequently, the UIM carrier is entitled to pursue all the defenses against the UIM claimant that could have been asserted by the tortfeasor. *See id.* (the UIM carrier is not compelled to pay if the same recovery could not be obtained from the tortfeasor). Because the provision of UIM coverage is by nature adversarial, an inevitable conflict exists between the UIM carrier and the UIM insured. *Fisher v. Allstate Ins. Co.*, 136 Wn.2d 240, 249, 961 P.2d 350 (1998). The friction between this adversarial relationship and the traditional fiduciary relationship of an insured and an insurer is difficult to resolve. The difficulty is complicated by those cases where an attorney represents an insured in an action against the tortfeasor and then must represent the carrier when the insured makes a UIM claim. Such was not the case here, however. Considering the fact that USAA's attorney was involved only in Ms. Barry's UIM claim, it follows that communications between USAA and its attorney concerning the UIM claim are privileged for the purposes of Ms. Barry's bad faith insurance suit.

■■ Even privileged communications may be discoverable, however, if they qualify for the fraud·exception. *Escalante*, 49 Wn. App. at 394. Generally, the exception is invoked only when the insured presents a prima facie showing of bad faith tantamount to civil fraud. *Id.* To strip a communication of the attorney-client privilege, the party seeking discovery must show that (1) its opponent was engaged in or planning a fraud at the time the privileged communication was made, and (2) the communication was made in furtherance of that activity. *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 95-96 (3d Cir. 1992). *Escalante*, 49 Wn. App. at 394, established a two-step analysis for determining whether fraudulent conduct exists that is sufficient to vitiate the privilege. *Seattle Northwest Sec. Corp. v. SDG Holding Co.*, 61 Wn. App. 725, 740, 812 P.2d 488

(1991). First, the court determines whether there is a factual showing adequate to support a good faith belief by a reasonable person that wrongful conduct sufficient to evoke the fraud exception has occurred. *Escalante,* 49 Wn. App. at 394. Second, if so, the court subjects the documents to an in camera inspection to determine whether there is a foundation in fact for the charge of civil fraud. *Id.; see also Seattle Northwest,* 61 Wn. App. at 740. The in camera inspection is a matter of trial court discretion. *Escalante,* 49 Wn. App. at 394.

Washington courts have established that an insured may sue its insurer for bad faith investigation of the insured's claim and violation of the CPA regardless of whether the insurer ultimately satisfies the claim or correctly determines coverage did not exist. *Coventry Assocs. v. American States Ins. Co.,* 136 Wn.2d 269, 279, 961 P.2d 933 (1998). Insurance carriers have a general duty of good faith in their actions with their insureds and may violate that duty if they act without reasonable justification. *Id.* at 279-80. An insurer's violations of the insurance regulations, specifically the "unfair claims settlement practices" of WAC 284-30-330, are sufficient to support an action for violation of the CPA. *Industrial Indem. Co. of the N.W., Inc. v. Kallevig,* 114 Wn.2d 907, 922, 792 P.2d 520, 7 A.L.R.5TH 1014 (1990). Ms. Barry's complaint alleged violations of WAC 284-30-330, including subsection (3) ("Failing to adopt and implement reasonable standards for the prompt investigation of claims . . . ."); subsection (6) ("Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims . . . ."); and subsection (7) (compelling insureds to institute litigation or arbitration to recover amounts due under an insurance policy "by offering substantially less than the amounts ultimately recovered in such actions . . . ."). She also claimed USAA failed to timely respond to her claim (WAC 284-30-360) and failed to timely act on that claim (WAC 284-30-380).

While these allegations may be sufficiently supported by the record to establish a prima facie case of bad faith insur-

ance and CPA violations, they do not, in and of themselves, constitute a good faith belief that USAA committed fraud. The trial court reviewed the case file and found that Ms. Barry's allegations of significant delay in the response to and settlement of her UIM claim were not adequate to support a good faith belief that USAA engaged in wrongful conduct sufficient to invoke the fraud exception. The court based this decision on the facts that Ms. Barry did not make a claim for UIM benefits until about a year after the accident and USAA made offers of settlement within a year of the claim. Accordingly, the trial court refused to inspect the privileged documents in camera. On the limited issue of the fraud exception to the attorney-client privilege, we cannot say the trial court's exercise of discretion was manifestly unreasonable or based on untenable grounds. *Puget Sound*, 117 Wn.2d at 778.

Ms. Barry's motion to compel was not confined, however, to production of the privileged communications between USAA and its attorney. She requested her entire claims file and claims diary, including information regarding the adjuster's actions. USAA withheld all documents it felt were work product, including evaluations, medical records and documentation upon which USAA relied in making its coverage decision. The trial court did not specifically address access to the work product. On appeal, Ms. Barry contends the requested documents are not subject to work product immunity and even if they are, they are discoverable in this case due to substantial need.

Pursuant to the work product rule, CR 26(b)(4), documents prepared in anticipation of litigation are discoverable only upon a showing that the party seeking discovery has a substantial need for the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by any other means. We first ask whether the documents sought by Ms. Barry were prepared in anticipation of litigation.

Washington courts recognize no work product immunity for documents prepared in the regular course of

business. *Escalante*, 49 Wn. App. at 395. In determining whether particular materials were prepared in anticipation of litigation or in the regular course of business, the trial court looks to the specific parties involved and the expectations of those parties. *Heidebrink*, 104 Wn.2d at 400; *Escalante*, 49 Wn. App. at 396. An insurer has a contractual obligation to provide UIM coverage to an insured who qualifies for the benefits. Most of the materials requested by Ms. Barry are those an insurance carrier relies on in the regular course of business to determine the limits of UIM coverage. At any rate, the only way a court can accurately determine what portions of a file may be exempt from disclosure as work product is by an in camera review of the file. *Limstrom v. Ladenburg*, 136 Wn.2d 595, 615, 963 P.2d 869 (1998).

Accordingly, we remand to the trial court for in camera review of the claims file and a determination of which documents are protected by the work product rule. Following that determination, the trial court should exercise its discretion to decide whether the work product is discoverable on the basis of substantial need. *Heidebrink*, 104 Wn.2d at 401. In that regard, we note that the clearest basis for production is when crucial information is in the exclusive control of the opposing party. *Id.* As noted in *Escalante*, 49 Wn. App. at 396 n.11, the nature of the issues in a bad faith insurance action automatically establishes substantial need for discovery of certain materials in the claims file.

Reversed and remanded.

SWEENEY and KATO, JJ., concur.