237 P.3d 309 (2010)
Bruce CEDELL, a single man, Respondent,
v.
FARMERS INSURANCE COMPANY OF WASHINGTON, doing business in the State of Washington, Appellant.
No. 38921-5-II.
Court of Appeals of Washington, Division 2.
August 3, 2010.
*311 Curt E.H. Feig, Michael A. Guadagno, Nicoll Black & Feig PLLC, Seattle, WA, for Appellant.
Stephen Lyle Olson, Olson Zabriskie Campbell, Montesano, WA, for Respondent.
BRIDGEWATER, P.J.
¶ 1 Farmers Insurance Company (Farmers) appeals from trial court orders compelling discovery, imposing sanctions against Farmers, and finding that an insurance company does not have a right to attorney-client privilege in a first-party-insurer claim for bad faith. We hold that an insurance company has a right to attorney-client privilege in a first-party-insurer claim for bad faith absent showing an established exception to the privilege applies, such as fraud. Further, we hold that the trial court abused its discretion by requiring an in-camera review without Cedell first establishing a sufficient factual basis of fraud. We reverse, remand, and vacate the orders compelling discovery, awarding sanctions and attorney fees because Bruce Cedell did not meet his burden of showing fraud in order to overcome the attorney-client privilege.

FACTS
¶ 2 This case arose from a claim for accidental fire damage to Cedell's home under a Farmers' policy. A year after the fire, Farmers had still not paid Cedell's claim so he filed suit, alleging that Farmers (1) failed to acknowledge pertinent communications; (2) failed to conduct a prompt investigation of his claim; (3) failed to act promptly, fairly, and equitably; (4) engaged in unfair and/or deceptive acts or practices; (5) effectively denied his claim by delaying action; and (6) acted unreasonably in denying his claim for coverage and/or payment of benefits.[1] Farmers had hired Ryan Hall, an attorney, to assist it making a coverage determination.
¶ 3 Cedell sent Farmers interrogatories and a request for production of documents, including Farmers' case file on Cedell's claim. Farmers responded by providing a heavily redacted copy of the case file and included a privilege log, which cited attorney-client privilege and work product as the basis for over 200 redactions and withholdings.[2] In addition, Farmers declined to answer multiple interrogatories because of attorney-client privilege and work product. Cedell then filed a motion to compel, arguing that attorney-client privilege and work product did not apply in bad faith litigations.
¶ 4 Farmers responded, arguing that it had a right to the protections of attorney-client privilege and work product even when a plaintiff alleged bad faith. It also sought a protective order preventing discovery of all privileged communications.
¶ 5 The trial court found that (1) Cedell was not home at the time of the fire, (2) the fire department and Farmers' fire investigator concluded the fire was accidental, (3) Farmers knew the fire left Cedell homeless, (4) a Farmers' adjuster appraised the value at $56,498.84, (5) another adjuster estimated the damage at $70,000 in building and $35,000 in contents, (6) Farmers made a one-time offer of $30,000 with an acceptance period that fell when Hall was out of town, (7) Farmers threatened to deny Cedell coverage and claimed he misrepresented material information without explanation, and (8) the damage to the house was eventually valued at over $115,000 and more than $16,000 in code updates. Citing Escalante v. Sentry *312 Ins. Co., 49 Wash.App. 375, 393, 743 P.2d 832 (1987), review denied, 109 Wash.2d 1025 (1988), overruled on other grounds by Ellwein v. Hartford Accident & Indem. Co., 142 Wash.2d 766, 15 P.3d 640 (2001), the trial court found these facts adequate to support a good faith belief that Farmers engaged in wrongful conduct sufficient to invoke the fraud exception to the attorney-client privilege. The trial court ordered an in-camera review of Farmers' redacted documents.
¶ 6 After conducting an in-camera review, the trial court found that
In the context of a claim arising from a residential fire, the insurer owes the insured a heightened dutya fiduciary duty, which by its nature is not, and should not be adversarial.[3] Under such circumstances, the insured is entitled to discover the entire claims file kept by the insured without exceptions for any claims of attorney-client privilege.
CP at 487. The trial court found Farmers' claims of attorney-client privilege without merit. The trial court also found that Cedell was entitled to Farmers' work product. The trial court ordered Farmers to provide Cedell with all documents that it withheld and/or redacted based on attorney-client privilege and work product. The trial court also imposed sanctions and awarded Cedell attorney fees for Farmers' failure to provide the information.
¶ 7 We granted Farmers' motion for discretionary review and an emergency stay.

ANALYSIS

I. Attorney-Client Privilege
¶ 8 Farmers argues that the trial court abused its discretion by ordering the disclosure of confidential and privileged information with no basis to invoke the fraud exception to the attorney-client privilege.
¶ 9 In the attorney-client privilege context, we review the trial court's determination to permit or deny discovery for abuse of discretion. Barry v. USAA, 98 Wash.App. 199, 204, 989 P.2d 1172 (1999). But we review de novo the trial court's interpretation of the privilege statute. Drewett v. Rainier Sch., 60 Wash.App. 728, 731, 806 P.2d 1260, review denied, 117 Wash.2d 1003, 815 P.2d 266 (1991).
¶ 10 Parties may obtain discovery regarding any matter, not privileged, relevant to the subject matter of the pending action. CR 26(b)(1). A party may serve on another party a request to produce documents that constitute or contain matters within the scope of CR 26(b) and that are in the possession, custody, or control of the party on whom the request is served. CR 34(a)(1). If a party disagrees with the scope of production requested during discovery, it must move for a protective order and cannot withhold discoverable materials. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 354, 858 P.2d 1054 (1993).
¶ 11 The attorney-client privilege, codified in RCW 5.60.060(2), provides that an attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given in the course of professional employment. Former RCW 5.60.060(2)(a) (2007). In general, this privilege protects confidential attorney-client communications from discovery or public disclosure so that clients will not hesitate to speak freely and fully inform their attorneys of all relevant facts. Escalante, 49 Wash. App. at 393, 743 P.2d 832.

A. Insurance Companies are Entitled to Attorney-Client Privilege in a Bad Faith Action
¶ 12 Cedell argues that there is no right to attorney-client privilege in a first-party-insured bad faith claim because it is not supposed to be an adversarial situation and because information about the insurance company's reasoning and claim handling is central to a bad faith claim.
*313 ¶ 13 In Escalante, the plaintiffs sued Sentry Insurance for bad faith, among other claims, for failure to pay an underinsured motorist (UIM) claim. Escalante, 49 Wash. App. at 379-80, 743 P.2d 832. The Escalantes sent interrogatory requests that sought, relevantly, general information and materials related to Sentry's evaluation of the Escalantes's claim. Escalante, 49 Wash. App. at 393, 743 P.2d 832. Sentry objected based on the attorney-client privilege and work product. Escalante, 49 Wash.App. at 393, 743 P.2d 832. The trial court denied the Escalantes's motion to compel. Escalante, 49 Wash.App. at 381, 743 P.2d 832. On appeal, the Escalantes argued that the attorney-client privilege did not protect information relevant to a bad faith claim. Escalante, 49 Wash.App. at 393, 743 P.2d 832.
¶ 14 First, the Escalante court recognized the general attorney-client privilege rule codified by RCW 5.60.060(2). Escalante, 49 Wash.App. at 393, 743 P.2d 832. The court then acknowledged the "fraud" or "civil fraud" exception to the privilege. Escalante, 49 Wash.App. at 394, 743 P.2d 832. The court held that the fraud or civil fraud exception could be invoked only when the insured presented a prima facie showing of bad faith tantamount to civil fraud. Escalante, 49 Wash.App. at 394, 743 P.2d 832. The court did not hold, however, that there was no attorney-client privilege in a bad faith lawsuit.
¶ 15 In Barry, an insured sued her insurance company, USAA, for bad faith for failure to pay a UIM claim. Barry, 98 Wash. App. at 202, 989 P.2d 1172. During discovery, she requested documents including reports from the claims adjuster and correspondence from the attorney who handled the UIM claim. Barry, 98 Wash.App. at 202, 989 P.2d 1172. When USAA did not comply, Barry moved to compel production. Barry, 98 Wash.App. at 203, 989 P.2d 1172. The trial court found that Barry failed to establish sufficient wrongful conduct to invoke the fraud exception to the attorney-client privilege and declined to inspect the claims file. Barry, 98 Wash.App. at 202-03, 989 P.2d 1172.
¶ 16 On appeal, the court first examined whether Barry had sought any privileged materials. Barry, 98 Wash.App. at 204, 989 P.2d 1172. The court held that "it is a well-established principle in bad faith actions brought by an insured against an insurer under the terms of an insurance contract that communications between the insurer and the attorney are not privileged with respect to the insured." Barry, 98 Wash.App. at 204, 989 P.2d 1172 (citing Baker v. CNA Ins. Co., 123 F.R.D. 322, 326 (D.Mont.1988); Silva v. Fire Ins. Exch., 112 F.R.D. 699 (D.Mont. 1986); Escalante, 49 Wash.App. at 394, 743 P.2d 832). The court agreed with the Silva[4] court: "`The time-worn claims of work product and attorney-client privilege cannot be invoked to the insurance company's benefit where the only issue in the case is whether the company breached its duty of good faith in processing the insured's claim.'" Barry, 98 Wash.App. at 204, 989 P.2d 1172 (quoting Silva, 112 F.R.D. at 699-700).
¶ 17 But the Barry court distinguished first party insured disputes from its case. Barry, 98 Wash.App. at 204-05, 989 P.2d 1172. The court held that in UIM claims, UIM carriers stand in the shoes of the underinsured motorist/tortfeasor and are entitled to pursue all defenses against the UIM claimant that the tortfeasor possessed. Barry, 98 Wash.App. at 205, 989 P.2d 1172. "Because the provision of UIM coverage is by nature adversarial, an inevitable conflict exists between the UIM carrier and the UIM insured." Barry, 98 Wash.App. at 205, 989 P.2d 1172. The friction of that relationship entitled USAA to the protections of attorney-client privilege. See Barry, 98 Wash.App. at 205, 989 P.2d 1172.
¶ 18 We reject Cedell's argument that an insurance company does not have any right to attorney-client privilege in a bad faith claim. Escalante did not hold that an insurance company has no right to assert attorney-client privilege in a bad faith action. It recognized the existence of the privilege and *314 then determined whether the fraud or civil fraud exception applied. Escalante, 49 Wash.App. at 393-94, 743 P.2d 832. Additionally, the issue in Barry was whether an attorney-client privilege existed in the UIM context, not in first party insured claims. Barry, 98 Wash.App. at 204, 205, 989 P.2d 1172. We agree with Farmers that, to the extent that Barry can be read to remove any attorney-client privilege in a first party bad faith claim, it is dicta and we decline to follow it.
¶ 19 An insurance company does not lose attorney-client privilege protection simply because its litigation opponent raises an issue where advice of counsel may be relevant. While an attorney's impressions may be relevant to a bad faith claim, an automatic removal of attorney-client privilege would frustrate the purpose of the attorney-client privilege without cause. The fraud exception discussed below provides a litigant with sufficient means to discover relevant attorney-client communications. We note, however, that an insurance company may not hire an attorney as a claims adjuster just to fall within the attorney client privilege. A claims adjuster's conduct is not privileged simply because the claims adjuster happens to be a lawyer. Accordingly, only information, investigation, and advice Hall gave Farmers in his capacity as an attorney is subject to the privilege.
¶ 20 We next determine whether the fraud or civil fraud exception to the privilege applies here. The trial court erred by finding that an insurance company has no attorney-client privilege in a bad faith action as a matter of law.

B. Prima Facie Showing of Fraud Not Made
¶ 21 Farmers argues that the trial court abused its discretion by ordering an in-camera review of the claim file without a sufficient factual basis related to the fraud exception to the attorney-client privilege. Farmers contends that the alleged inconsistency between its valuation of Cedell's damaged property in the context of a disputed, suspicious claim, and the short time limit placed on the offer to settle is an insufficient factual basis to support in-camera review. We agree.
¶ 22 Even privileged communications may be discoverable if the fraud exception applies. Escalante, 49 Wash.App. at 394, 743 P.2d 832.[5] Generally, the exception is invoked only when the insured presents a prima facie showing of bad faith tantamount to civil fraud. Escalante, 49 Wash.App. at 394, 743 P.2d 832. To strip a communication of the attorney-client privilege, the party seeking discovery must show that (1) its opponent was engaged in or planning a fraud at the time the privileged communication was made, and (2) the communication was made in furtherance of that activity. Barry, 98 Wash.App. at 205, 989 P.2d 1172. Escalante established a two-step analysis for determining whether fraudulent conduct exists that is sufficient to overcome the privilege. Barry, 98 Wash.App. at 205, 989 P.2d 1172.
¶ 23 First, the trial court determines whether there is a factual showing adequate to show that wrongful conduct sufficient to evoke the fraud exception has occurred. Escalante, 49 Wash.App. at 394, 743 P.2d 832. Second, if so, the court conducts an in-camera inspection of the documents to determine whether there is a foundation in fact to overcome the privilege based on civil fraud. Escalante, 49 Wash.App. at 394, 743 P.2d 832. The in-camera inspection is a matter of trial court discretion. Escalante, 49 Wash.App. at 394, 743 P.2d 832. A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
¶ 24 To establish fraud, a litigant must show:
(1) a representation of an existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity or ignorance of *315 its truth, (5) [the speaker's] intent that [the fact] should be acted upon by the person to whom it is made, (6) ignorance of [the fact's] falsity on the part of the person to whom it is made, (7) the latter's reliance on the truth of the representation, (8) [the right of the person] to rely on it, and (9) [the person's] consequent damage.
Lambert v. State Farm Mut. Auto. Ins. Co., 2 Wash.App. 136, 141, 467 P.2d 214, review denied, 78 Wash.2d 993 (1970). Contrary to Cedell's argument, proving fraud is different from proving bad faith. A bad faith claim is proven by conduct such as:
(2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.
(3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.
(4) Refusing to pay claims without conducting a reasonable investigation.
(5) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed.
....
(7) Compelling insureds to institute or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings.
(8) Attempting to settle a claim for less than the amount to which a reasonable [person] would have believed he [or she] was entitled by reference to written or printed advertising material accompanying or made part of an application.
....
(13) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.
Former WAC 284-30-330 (1987); see also Indus. Indem. Co. of the Nw., Inc. v. Kallevig, 114 Wash.2d 907, 923, 792 P.2d 520 (1990) (insurer's violations of former WAC 284-30-330 constitute a violation of RCW 48.30.010(1) and thus a violation of RCW 19.86.170). The elements of bad faith and fraud are thus separate and distinct. To qualify for the fraud exception to attorney-client privilege, the plaintiff must show fraud, as opposed to just bad faith.
¶ 25 The trial court found that (1) Farmers made a one-time offer of $30,000 with an acceptance period that fell when Hall was out of town, (2) Farmers threatened to deny Cedell coverage without explanation, and (3) the damage to the house was eventually determined to be far more than Farmers' $30,000 offer. Such conduct might constitute a violation of former WAC 284-30-330. But these facts are not adequate to support a finding of fraud. There is no evidence, for example, that Farmers knowingly misrepresented a material fact or that Cedell justifiably relied on a misrepresented material fact to his detriment. While the trial court found a factual showing of bad faith, it did not find a factual showing of fraud. The trial court therefore abused its discretion by ordering an in-camera review on the evidence presented.

C. No Factual Basis Finding
¶ 26 The trial court also abused its discretion by ordering disclosure and production of the information without finding a foundation in fact for a claim of civil fraud. Farmers correctly notes that the trial court's only finding was that it was not entitled to the attorney-client privilege at all. As we stated above, Farmers is entitled to attorney-client privilege unless some exception applies. Accordingly, we vacate the order compelling discovery and remand.

II. Attorney Fees
¶ 27 Because of our holding that there were no facts to support a finding of fraud, we vacate the attorney fees award. We do not examine the calculation method. Additionally, we vacate the sanctions imposed under CR 26(g) and CR 37. The Silva theory regarding attorney-client privileges had never been applied in Washington and is not the law; thus, an award under either CR 26(g) or CR 37 is inappropriate.
*316 ¶ 28 In conclusion, alleging bad faith on the part of an insurer does not do away with the attorney-client privilege. Instead, the plaintiff must still show an exception to the attorney-client privilege, such as the fraud exception. That exception requires a showing of actual fraud, not just bad faith. Discovery sanctions are inappropriate in this case.
¶ 29 We reverse and remand for further proceedings consistent with this opinion before a different trial court judge with instructions to vacate the order compelling discovery, awarding attorney fees, and imposing sanctions.
We concur: ARMSTRONG and QUINN-BRINTNALL, J.
NOTES
[1] Cedell appears to allege violations of WAC 284-30-330 (enumerated unfair claims settlement practices); RCW 48.30.010 (insurance unfair practices); and the Consumer Protection Act, RCW 19.86.170.
[2] Farmers also redacted certain information as irrelevant. The trial court found this improper and imposed up to $2,500 in attorney fees and $5,000 in sanctions payable to the court. Farmers does not seek review of the trial court's ruling on its failure to disclose other, non-privileged material. Thus, we do not address Cedell's arguments on this issue.
[3] This language mirrors that found in Barry v. USAA, 98 Wash.App. 199, 205, 989 P.2d 1172 (1999), which is discussed in section I.A.
[4] Silva involved a bad faith insurance claim that arose out of a house fire. Silva, 112 F.R.D. at 699. That court unequivocally held that "a plaintiff in a first-party bad faith action is entitled to discover the entire claims file kept by the insurer." Silva, 112 F.R.D. at 699.
[5] Farmers seems to argue that Cedell implicitly conceded that an attorney-client privilege exists because he cited RCW 5.60.060(2). Farmers argues that Cedell conceded that attorney-client privilege exists unless an exception is shown because Cedell cited language to that effect. Cedell may argue in the alternative without waiving an argument.