
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | No. 68421-3-I |
| v. | ) | |
| | ) | |
| JORDAN J. PORTCH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: September 30, 2013 |
| | ) | |

DWYER, J. – Jordan Portch appeals from his conviction for residential burglary and tampering with physical evidence. He contends that the trial court violated the attorney-client privilege and work product doctrine when it permitted a defense investigator to testify about his investigation into an alibi defense. But to the extent the investigator's testimony involved information that the defense had voluntarily disclosed when it notified the State of its planned alibi defense, Portch has waived the right to assert the privileges. And Portch has failed to demonstrate that the remainder of the investigator's testimony disclosed any confidential attorney-client communications or defense theories. Portch's challenge to the joinder of charges for trial is also without merit. We affirm.

I

Jordan Portch and Megan Gates began dating in late 2009. From February 2010 until the couple broke up in May 2010, Portch lived with Gates in the Lynnwood home she shared with her parents.

On the afternoon of January 14, 2011, Lynnette Gates, Megan's mother, was at home watching television in an upstairs bedroom. At about 4:30 p.m., the family's two dogs suddenly jumped off the bed and ran downstairs. When she heard a rustling noise, Lynnette thought the dogs had gotten into the garbage and went to investigate.

At the bottom of the stairs, Lynnette encountered Portch in the hallway. Portch was wearing a dark, possibly leather, coat and dark jeans. When Lynnette asked what he was doing in her house, Portch shuffled around briefly without responding and then ran toward the rear of the house. Lynnette followed and saw Portch leave through a broken sliding glass door. Shattered glass from the door lay on the carpet and back deck. Lynnette called 911.

At about the same time, Rebecca Tindall, a neighbor, was walking her dog near the Gates's home. She noticed a late-model blue sedan parked in an unusual spot. The car had a dent near the front passenger side. The engine appeared to be running, and someone was sitting in the front passenger seat. A man wearing dark jeans and a leather jacket suddenly sprinted past Tindall, got into the car, and drove off.

The State charged Portch with one count of residential burglary.

Prior to trial, defense counsel notified the State that Portch would present an alibi defense. See CrR 4.7(b)(2)(xii). Defense counsel also provided what purported to be a body shop repair estimate for Portch's car. The one-page document, dated December 10, 2010, recorded the mileage on Portch's car as 115,721. The defense also informed the State that Joel Martin, a defense investigator, had inspected Portch's car after charges were filed, taken photographs, and recorded an odometer reading of 115,726. Based on the distance from the body shop to the Gates's home, the defense indicated it would use the odometer evidence to establish that Tindall could not have seen Portch's car after the burglary on January 14, 2011.

Upon further investigation, the State discovered that shortly before the initial trial date, Portch asked Shayne Hedahl, the owner of the body shop, to delete the estimate from the shop's computer system. Hedahl complied with the request. Portch later returned and asked Hedahl to recreate the estimate. Initially, Hedahl could not reproduce the estimate, but he later found a way to recover the data. The restored estimate, which consisted of several pages, reflected an odometer reading of 114,979 on December 10, 2010, and noted damage to the right front side panel of Portch's car, consistent with Tindall's observations. Some evidence indicated that Portch told the body shop employees that his attorney had asked him to have the estimate removed. The

State asserted that Portch's actions after the burglary charge were relevant to show a consciousness of guilt.

The trial court ruled that any statements Portch voluntarily made to the body shop employees about his attorney having requested destruction of the evidence were admissible and fell outside the attorney-client privilege. Based on the potential conflict, the court allowed defense counsel to withdraw and appointed new counsel.

The State then amended the information to add charges of tampering with physical evidence and tampering with a witness. The trial court denied Portch's motion to sever the tampering counts.

Portch moved to preclude the State from calling Joel Martin as a witness. The State intended to question Martin about his investigation into Portch's alibi defense, including the body shop estimate and the related evidence involving the odometer reading on Portch's car. Defense counsel objected, arguing that Martin's testimony would violate both the attorney-client privilege and the work product doctrine. The defense also maintained that Martin's testimony was not relevant because it no longer planned to introduce the odometer evidence as part of Portch's alibi defense.

The trial court denied Portch's motion, concluding that Martin's proposed testimony fell outside the scope of the attorney-client privilege and the work product doctrine and that Portch had waived any privileges by asserting the alibi

defense. The court also ruled that Martin's testimony remained relevant even though Portch was now relying on different evidence to support his alibi defense.

At trial, Martin testified about his investigation of the body shop estimate and the odometer readings on Portch's car. On behalf of the defense, Martin testified that he prepared a photomontage and showed it to Rebecca Tindall, who identified someone other than Portch as the man she saw running after the burglary.

Ryan Danekas testified that he had known Portch since elementary school and continued to "hang out" with him about once a month. Danekas recalled that he got off work on the morning of January 14, 2011, and that Portch drove over to his apartment on a motorcycle at about 11:00 a.m. The two then "sat around, hung out, [and] talked." At about 4:00 p.m., Danekas and Portch walked to a nearby convenience store to buy soft drinks. Danekas estimated that Portch left the apartment at about 7:00 p.m.

The jury found Portch guilty as charged of residential burglary and tampering with physical evidence.[1]

---

[1] The trial court dismissed the witness tampering charge at the conclusion of the State's case.

II

Portch contends that the trial court violated the attorney-client privilege and the work product doctrine when it permitted the defense investigator to testify about his investigation into the odometer readings on Portch's car. But because the defense had previously disclosed the essence of Martin's testimony when it provided the State with details about the alibi defense, Portch has failed to demonstrate any error.

The attorney-client privilege, codified in RCW 5.60.060, "protects confidential attorney-client communications from discovery so clients will not hesitate to fully inform their attorneys of all relevant facts." Barry v. USAA, 98 Wn. App. 199, 204, 989 P.2d 1172 (1999). But the privilege is generally limited to communications between attorney and client; it does not generally extend to "communications between an attorney and a third party on a client's behalf, nor does it protect materials compiled by an attorney from outside sources on a client's behalf." 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 501.10, at 145-46 (5th ed.2007).

Portch contends that Martin was "privy to confidential attorney-client communications" and that his entire testimony was protected because it was "a direct result of this privilege." But he fails to identify any specific portion of Martin's testimony that violated the privilege.

Martin testified that he was assigned to investigate Portch's alibi defense by defense counsel and that he served a subpoena on Scott Hardy, the body shop employee who had prepared the original estimate for Portch on December 10, 2011. But Martin did not know the subject of Hardy's testimony. As part of his investigation, Martin also took pictures of Portch's car and the current odometer reading and compared the current reading with the reading on the estimate. He then determined the driving distance between the body shop and the Gates's home. Martin also interviewed Hedahl, the body shop owner, who gave him a copy of the recreated complete estimate with the lower odometer reading.

Martin's testimony focused primarily on his own actions in investigating the estimate and mileage issues. The testimony did not reveal any direct or implicit communications between Portch and defense counsel. At one point, when Martin volunteered something that Portch had told him, the trial court sustained the defense objection. The trial court also sustained objections to questions about why Martin was no longer an investigator for Portch and how Martin would have testified in support of the original alibi claim. Under the circumstances, Martin's testimony did not reveal any confidential communications. The trial court properly concluded that the testimony did not violate the attorney-client privilege.

III

Portch also contends that Martin's testimony violated the work product doctrine. "The work product doctrine protects from discovery an attorney's work product, so that attorneys can 'work with a certain degree of privacy and plan strategy without undue interference.'" State v. Pawlyk, 115 Wn.2d 457, 475, 800 P.2d 338 (1990) (quoting Coburn v. Seda, 101 Wn.2d 270, 274, 677 P.2d 173 (1984)). The doctrine applies to "research, . . . records, correspondence, reports or memoranda to the extent that they contain the opinions, theories or conclusions of investigating or prosecuting agencies." CrR 4.7(f)(1); Pawlyk, 115 Wn.2d at 477. But the voluntary disclosure of work product to a third party generally results in a waiver of the privilege. See Limstrom v. Ladenburg, 110 Wn. App. 133, 145, 39 P.3d 351 (2002).

Portch's arguments on work product rest solely on Martin's identity as a defense investigator. In argument before the trial court, Portch did not dispute the fact that Martin's proposed testimony involved information that had already been disclosed to the State in conjunction with the defense's claim of alibi, including the nature of the alibi defense, the original body shop estimate, the potential defense witnesses that Martin had subpoenaed, and the photos of Portch's car and odometer. Portch has not addressed the substance of Martin's testimony or identified any testimony disclosing defense "opinions, theories or

conclusions" that had not already been voluntarily disclosed. The trial court properly determined that Portch had waived any work product privilege.

IV

Citing State v. Garza, 99 Wn. App. 291, 994 P.2d 868 (2000), Portch contends that the trial court violated his Sixth Amendment right to counsel when it permitted the State to call the defense investigator as a witness. But Garza involved a potential "'intentional intrusion into the attorney-client relationship'" when jail officers searched inmates' legal materials. Garza, 99 Wn. App. at 299 (quoting Shillinger v. Haworth, 70 F.3d 1132, 1142 (10th Cir. 1995)). Because Portch has failed to demonstrate any violation of the attorney-client privilege or work product doctrine, Garza has no application to the facts of this case. Moreover, our Supreme Court has rejected the contention that the attorney-client privilege is part of the Sixth Amendment right to counsel. Pawlyk, 115 Wn.2d at 468-69.

V

Portch contends that the trial court erred in permitting joinder of the burglary and tampering offenses and denying his motion for severance. Because Portch failed to renew the motion to sever before the close of trial, he has waived the issue of severance. State v. Bryant, 89 Wn. App. 857, 864, 950 P.2d 1004 (1998). Consequently, only the issue of joinder is preserved for review. Bryant, 89 Wn. App. at 865. The question of whether multiple offenses are properly

joined "is a question of law subject to full appellate review." Bryant, 89 Wn. App. at 864.

Portch concedes that joinder of the burglary and tampering charges was proper under CrR 4.3(a)(1) and (2) because the offenses involved "the same or similar character" or were "a series of acts connected together." He contends, however, that joinder was unfairly prejudicial because the evidence was not cross-admissible and likely caused the jury to cumulate evidence to find guilt.

The joinder of multiple offenses may prejudice the defendant because:

> "(1) [the defendant] may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find."

State v. Bythrow, 114 Wn.2d 713, 717, 790 P.2d 154 (1990) (quoting State v. Smith, 74 Wn.2d 744, 755, 446 P.2d 571 (1968) vacated in part, 408 U.S. 934, 92 S. Ct. 2852, 33 L. Ed. 2d 747 (1972), overruled on other grounds in State v. Gosby, 85 Wn.2d 758, 539 P.2d 680 (1975)). Factors that offset the potential prejudice of joinder include: "(1) the strength of the State's evidence on each count; (2) the clarity of defenses to each count; (3) the court's instruction to the jury as to the limited purpose for which it was to consider the evidence of each crime; and (4) the admissibility of the evidence of the other crimes even if they

had been tried separately or never charged or joined." State v. Eastabrook, 58 Wn. App. 805, 811-12, 795 P.2d 151 (1990).

Here, the charges were based primarily on eyewitness testimony. The relatively strong evidence supporting each charge reduced the possibility that the jury might base its "finding of guilt on any one count on the strength of the evidence of another." Bythrow, 114 Wn.2d at 721-22. Portch's defenses were also clear and distinct. He claimed that he was not the intruder at the Gates's home and that the State had failed to prove that any tampering occurred. In addition, the instructions directed the jury to consider each count separately and provided that the "verdict on one count should not control [the] verdict on any other count." Instruction 2; see also 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 3.01 (3d ed. 2008); Bythrow, 114 Wn.2d at 723. We must presume that the jury followed those instructions. State v. Howard, 52 Wn. App. 12, 24, 756 P.2d 1324 (1988). Finally, contrary to Portch's assertions, the trial court correctly determined that the evidence was cross admissible. See State v. Sanders, 66 Wn. App. 878, 885-86, 833 P.2d 452 (1992) (in prosecution for rape and witness tampering, fact of rape charge admissible in separate witness tampering trial to show why the tampering occurred; evidence of witness tampering admissible in separate rape trial to show consciousness of guilt).

Under the circumstances, the concern for judicial economy clearly outweighed the potential prejudice. See Bythrow, 114 Wn.2d at 723. The trial court properly joined the charges for trial.[2]

Affirmed.

We concur:

_____

[2] The State contends that contrary to our decision in Bryant, Portch also waived any right to challenge the prejudice resulting from joinder when he failed to renew his severance motion. Because the offenses were properly joined, we do not address this contention.