COURT OF APPEALS DIV 1
2018 MAY 21 AM 8: 43

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| SHANNON LEAHY, | ) | No. 76272-9-I |
|  | ) |  |
| Appellant, | ) | DIVISION ONE |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| STATE FARM MUTUAL | ) | PUBLISHED |
| AUTOMOBILE INSURANCE | ) |  |
| COMPANY, | ) | FILED: May 21, 2018 |
|  | ) |  |
| Respondent. | ) |  |
|  | ) |  |

Cox, J. — Shannon Leahy appeals the trial court's discovery orders and its order granting summary judgment to State Farm Mutual Automobile Insurance Company, dismissing her extracontractual claims with prejudice. We hold that the trial court did not abuse its discretion in ruling on discovery matters. But there are genuine issues of material fact on the reasonableness of State Farm's actions in dealing with her UIM claim. We reverse and remand for further proceedings.

On November 1, 2010, Leahy's car was struck from behind, and she suffered soft tissue injuries to her neck and back. The other driver was at fault, and that driver's $25,000 liability insurance limit was split between three injured parties. Leahy received only $9,128.50 of this insurance.

She had automobile insurance with State Farm, including $25,000 of personal injury protection insurance (PIP) and another $100,000 in underinsured motorist coverage (UIM). Leahy received medical treatment for her injuries including chiropractic, massage, and acupuncture services.

Almost 24 months after the accident, State Farm requested that Leahy undergo an independent medical examination (IME) to determine whether the treatments she was receiving were reasonable and medically necessary.

State Farm contacted a third party vendor, MES Solutions, and arranged for Leahy to be examined by Dr. Geoff Lecovin, a licensed naturopath, chiropractor, and acupuncturist. Leahy did not object. After the IME, Dr. Lecovin determined that the treatments Leahy received were appropriate but excessive. He determined that, although she was not yet at maximum medical improvement (MMI), she should have been referred for physical therapy after about 20 acupuncture and 20 massage visits because those treatments were no longer helping. He recommended that Leahy have six weeks of twice-weekly physical therapy.

On December 17, 2012, State Farm informed Leahy's counsel that it would not cover any additional massages or acupuncture treatments because they were no longer reasonable and necessary. State Farm asked Leahy to inform it if either she or her medical providers had new or additional information that she would like it to consider. Leahy did not submit any additional information at that time.

While being treated for her soft tissue injuries, Leahy had also sought UIM benefits for other injuries. In May 2012, she had informed State Farm that she had been diagnosed with dermatomyocitis (DM) and that the DM was either caused or triggered by the auto accident. DM is an autoimmune disease causing muscle inflammation, fatigue, and rashes. Leahy informed State Farm that she was seeking compensation under her UIM for the medical expenses associated with DM.

State Farm informed Leahy that it would likely seek medical review to determine whether her DM was caused by the accident. On June 4, 2012, State Farm received a letter of representation from Leahy's attorneys and it assigned the claim to claim representative Leo Jung.

Jung contacted State Farm's internal injury claim trainers who informed him that the cause of DM is unknown but is suspected to be triggered by outside factors such as malignancy, drugs, and infectious agents in genetically predisposed individuals.

Jung requested a demand letter from Leahy's counsel on September 17, 2012. On June 23, 2013, Leahy's counsel sent a demand letter alleging that the auto accident caused a "lighting up" of Leahy's "dormant DM." The demand estimated Leahy's damages at $287,900, most of which were medical expenses related to DM. Leahy sought the policy limits of both her PIP and UIM.

Jung requested that Leahy submit to State Farm all of her medical records for the three years prior to the accident. Leahy did so, and those records made no mention of DM or associated conditions prior to the accident. On December

3, 2013, Jung told Leahy's counsel that he did not have enough information to conclude that the DM had been caused by the accident and made an offer to waive $1,615 of State Farm's PIP subrogation rights.

On December 6, 2013, Leahy sent State Farm the medical report of Dr. Paul Brown, a rheumatologist, who had examined Leahy in October 2013 and concluded that her DM was caused by the accident. State Farm then contacted Medical Consultants Network (MCN) to obtain an expert to review Dr. Brown's report.

MCN selected Dr. Kenneth Ta, a rheumatologist, who concluded that it was more probable than not that Leahy's DM was not caused by the accident. He reported that there was no medical support for a causal relationship between trauma such as that resulting from an accident and DM.

State Farm made a second offer of a $11,116.11 waiver of its PIP subrogation rights based on its determination that only Leahy's soft tissue injuries were caused by the accident. Leahy rejected the offer and sued State Farm for her UIM policy limits.

At the ensuing jury trial, Dr. Brown testified for Leahy and Dr. Ta testified for State Farm. Dr. Lecovin's deposition testimony was also in evidence.

The jury found in favor of Leahy and awarded her $884,017.31 in damages. Post-verdict, State Farm paid the $100,000 UIM policy limit and the remainder of the PIP limit because the jury had also found that Leahy incurred sufficient medical bills within the scope of her PIP to exhaust that coverage.

Leahy then amended her complaint to add extracontractual claims against State Farm for bad faith insurance practices, violation of the Consumer Protection Act (CPA), and violation of the Insurance Fair Conduct Act (IFCA). She originally brought additional claims, but they were dismissed pursuant to State Farm's first summary judgment motion and are not at issue on appeal.

Thereafter, the trial court resolved certain discovery disputes related to access to the insurer's claim file and the responsiveness of witnesses at depositions. Finally, the trial court granted summary judgment to State Farm and dismissed Leahy's remaining claims.

This appeal follows.

## DISCOVERY

Leahy first argues that the trial court abused its discretion in concluding that portions of State Farm's UIM claim file were protected either by attorney-client privilege or as work product. We hold that this ruling was proper.

"The attorney-client privilege applies to communications and advice between an attorney and client and extends to documents which contain a privileged communication."[1] "The purpose of the attorney-client privilege is to protect information from public disclosure so that clients will not hesitate to speak freely and fully inform their attorneys of all relevant facts."[2]

---

[1] Pappas v. Holloway, 114 Wn.2d 198, 203, 787 P.2d 30 (1990); see RCW 5.60.060(2)(a).

[2] Richardson v. Gov't Employees Ins. Co., 200 Wn. App. 705, 712, 403 P.3d 115 (2017), review denied, 414 P.3d 575 (2018).

The work product doctrine applies to "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative."[3] In order to obtain documents protected by the work product doctrine, the party seeking discovery must show a "substantial need" for the materials and that "the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."[4]

Whether a party has made the requisite showing of substantial need "is ordinarily vested in the sound discretion of the trial judge, who should look at the facts and circumstances of each case in arriving at an ultimate conclusion."[5] Even if the party shows a substantial need, "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."[6]

We review the trial court's discovery orders for abuse of discretion.[7] We will only reverse the trial court's discovery rulings "'on a clear showing' that the court's exercise of discretion was 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"[8]

---

[3] CR 26(b)(4).

[4] Id.

[5] Pappas, 114 Wn.2d at 210.

[6] CR 26(b)(4).

[7] Cedell v. Farmers Ins. Co. of Wash., 176 Wn.2d 686, 694, 295 P.3d 239 (2013).

[8] Id. (quoting T.S. v. Boy Scouts of Am., 157 Wn.2d 416, 423, 138 P.3d 1053 (2006)).

6

Leahy amended her complaint to assert the extracontractual claims on November 5, 2015. On December 18, 2015, she served State Farm with discovery including a request for its "entire unredacted claim file." That file contains information concerning action taken on Leahy's claim, correspondence, evidence gathered during the investigation of the claim, reserves, and notes and worksheets where claims representatives documented their evaluation of her claim.

State Farm produced significant portions of its claim file with redactions on some pages. All information withheld as privileged was described in a privilege log. State Farm withheld as work product all evaluations and mental impression evidence including settlement authority subsequent to June 23, 2013, the date on which it received the demand letter from Leahy's counsel stating litigation would follow. It also withheld as within the attorney-client privilege all documents concerning litigation strategy including communications with its attorneys in this action for periods after Leahy commenced this suit.

Leahy moved to compel, claiming that these documents were prepared in the ordinary scope of business and that she had a substantial need for them. State Farm opposed the motion, arguing that once it received the demand letter, it anticipated litigation and all internal evaluations, mental impressions, and legal theories compiled after June 23, 2013, were protected as work product under CR 26(b)(4).

The trial court entered an order requiring State Farm to submit many of the withheld documents for in camera review. State Farm submitted 342 pages

in response to this directive. On August 3, 2016, the trial court issued a letter ruling followed up by an order on September 6, 2016, requiring State Farm to produce 149 of the submitted pages. Leahy moved for reconsideration, but the trial court denied her motion.

Leahy argues that the trial court abused its discretion in limiting her access to information in State Farm's claims file about claim evaluations and settlement authority. We must disagree.

Turning first to documents withheld as within the attorney-client privilege, Leahy argues that "attorney-client privilege is rarely, if ever, available to insurers in extracontractual actions." She further argues that "[a]n insured's right to an insurer's claim file maintained for an insured is unambiguous under Washington law." A close reading of the relevant case authority does not support this argument.

Leahy relies on Cedell v. Farmers Insurance Company of Washington,[9] Barry v. USAA,[10] and Escalante v. Sentry Insurance,[11] to support her contentions. None support her.

Starting with the most recent, Cedell involved a bad faith insurance claim brought by a homeowner.[12] The supreme court held that "[t]o accommodate the special considerations of first party insurance bad faith claims, *except for under-*

---

[9] 176 Wn.2d 686, 295 P.3d 239 (2013).

[10] 98 Wn. App. 199, 989 P.2d 1172 (1999).

[11] 49 Wn. App. 375, 743 P.2d 832 (1987).

[12] 176 Wn.2d at 690-91.

*insured motorist (UIM) claims*, the insured is entitled to access to the claims file."[13]

But the court expressly recognized that, unlike other first party bad faith claims,

> [t]he UIM insurer steps into the shoes of the tortfeasor and may defend as the tortfeasor would defend. Thus, in the UIM context, the insurance company is entitled to counsel's advice in strategizing the same defenses that the tortfeasor could have asserted.[14]

Quite simply, in a UIM case like this, the insured must overcome a higher bar before it can discover privileged information.[15] Otherwise, the general rules protecting attorney-client communications and work product apply.

One way to overcome the bar is by showing that the party's opponent "was engaged in or planning a fraud at the time the privileged communication was made, and . . . the communication was made in furtherance of that activity."[16] If the fraud exception is asserted, the court engages in a two-step process first articulated in Escalante.[17] Specifically:

> First, the court determines whether there is a factual showing adequate to support a good faith belief by a reasonable person that wrongful conduct sufficient to evoke the fraud exception has occurred. Second, if so, the court subjects the documents to an in camera inspection to determine whether there is a foundation in

---

[13] Id. at 697 (emphasis added).

[14] Id.

[15] See id. at 700.

[16] Barry, 98 Wn. App. at 205.

[17] Cedell, 176 Wn.2d at 697-98 (citing Escalante, 49 Wn. App. at 394).

fact for the charge of civil fraud. The in camera inspection is a matter of trial court discretion.[18]

In Barry, the court applied the test articulated in Escalante.[19] Denisse Barry alleged that USAA violated the Insurance Code and committed bad faith in requiring her to institute litigation or arbitration to recover amounts due under her insurance policy, failing to timely respond to her claim, and failing to timely act on that claim.[20] The court held that, while Barry's allegations were sufficient "to establish a prima facie case of bad faith insurance and CPA violations," they were not enough to "constitute a good faith belief that USAA committed fraud."[21] Therefore, the trial court did not abuse its discretion in refusing to inspect the privileged documents in camera.[22]

Here, as in Barry, any communications between State Farm and its attorneys is privileged for purposes of this bad faith suit unless Leahy could show fraud.[23] But there is absolutely nothing in the record before us that shows fraud or anything suggesting fraud. More importantly, the trial court conducted its own in camera review of documents from the claim file and did not suggest that any

---

[18] Id. at 698 (quoting Barry, 98 Wn. App. at 206).

[19] 98 Wn. App. at 205-06.

[20] Id. at 201.

[21] Id. at 206-07.

[22] Id. at 207.

[23] Id. at 206-07.

fraud had been committed. In any event, it provided to Leahy the remedy to which she would have been entitled under Barry and Escalante.

Accordingly, Leahy has failed to show that the trial court abused its discretion in determining, after in camera review, that she was not entitled to documents covered by the attorney-client privilege.

Leahy also contends that trial court abused its discretion in allowing State Farm to withhold documents based on work product. We disagree.

In Barry, USAA had withheld as work product documents including evaluations, medical records and other materials upon which it relied in making its coverage decision.[24] The court recognized that most of the materials Barry requested were those relied upon by insurance carriers in the regular course of business to determine the limits of UIM coverage.[25] It held that "the only way a court can accurately determine what portions of a file may be exempt from disclosure as work product is by an in camera review of the file."[26]

Here, State Farm already produced the medical records and documentation it relied upon in making its coverage decision—two of the three types of documents at issue in Barry. And it produced all of Leahy's file before June 23, 2013. Pursuant to Barry, the trial court then conducted an in camera review before concluding that the remainder, involving evaluations and mental processes, was protected as work product.

---

[24] Id. at 207.

[25] Id. at 208

[26] Id.

While Leahy is correct that there is an established protocol governing discovery in bad faith insurance claims, this trial court followed that protocol by conducting an in camera review. She has nothing to complain about in this respect.

In her reply brief, Leahy relies on State Farm Fire & Casualty Company v. Justus, to support her contention that she is entitled to the claims file.[27] She argues that "denial of access to insurer claim files in extracontractual claim litigation contravenes the key purposes of discovery – 'the production of all relevant facts and the promotion of the efficient and early resolution of claims.'"[28] But Justus did not involve a UIM claim.[29] Moreover, in that case, the remedy was to remand for an in camera hearing and here the trial court has already held such a hearing.[30]

Leahy further argues that the trial court never addressed whether she had a substantial need for the documents that it determined were work product. She cites to Pappas v. Holloway, as support for her contention that, if the material sought to be discovered is essential to the party's claim or defense, an exception to CR 26(b)(4) should apply.[31] But Pappas concerned a legal malpractice action,

---

[27] 199 Wn. App. 435, 398 P.3d 1258, review denied, 189 Wn.2d 1026 (2017).

[28] Appellant's Reply Brief at 17.

[29] Justus, 199 Wn. App. at 439-40.

[30] Id. at 459-60.

[31] 114 Wn.2d 198, 787 P.2d 30 (1990).

not a bad faith insurance claim.[32] And the supreme court reiterated that it is within the trial court's "sound discretion" to determine whether a party has shown substantial need based upon the facts and circumstances of each case.[33]

Here, the trial court exercised its discretion by looking at the facts and circumstances of the case. First, it conducted an in camera review. Then, it held a hearing to consider Leahy's argument that she had a substantial need for these materials. She argued that she needed these materials in order to show that State Farm's actions were unreasonable. She claimed that without access to its internal valuations and settlement authority, she could not show that State Farm acted in bad faith by offering nothing on her UIM claim. The court considered her arguments and denied her motion. She has failed to show that the trial court abused its discretion in doing so.

Despite the trial court's exercise of its discretion in deciding that Leahy did not have a substantial need for these documents, Leahy argues that State Farm's internal valuation of her UIM claim and its rationale for its investigation and "low ball settlement offers" are vital to prove her extracontractual claims.

State Farm produced all of the documentation showing what it did to investigate and settle her claim. Leahy has failed to cite to any Washington authority holding that internal evaluations are "normally discoverable" or any

---

[32] See generally, id. at 200-02.

[33] Id. at 210.

cases where such documents were used by trial or appellate courts in determining whether an insurer's UIM settlement offer was made in bad faith.[34]

Leahy relies on federal authority.[35] But the work product doctrine in federal cases is a procedural immunity governed by Federal Rule of Civil Procedure 26(b)(4).[36] This court need only follow federal analysis if it finds the reasoning persuasive.[37] Leahy has failed to persuasively argue why this court needs to resort to federal analysis to guide its interpretation of CR 26(b)(4).[38]

Leahy also argues that State Farm is using discovery as both a "sword and a shield," producing only evidence that is favorable to it. But examination of the record does not support this contention. The materials relied upon by Jung in his affidavit in support of State Farm's second motion for summary judgment were produced before the June 23, 2013 letter, and State Farm produced all of its claim file prior to that date.

---

[34] See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

[35] See, e.g., Barge v. State Farm Mut. Auto. Ins. Co., 2016 WL 6601643 at *5 (W.D. Wash. Nov. 8, 2016).

[36] United Coal Cos. v. Powell Constr. Co., 839 F.2d 958, 966 (3rd Cir. 1988).

[37] Washburn v. City of Federal Way, 178 Wn.2d 732, 750-51, 310 P.3d 1275 (2013).

[38] Id.

We also note that at the hearing on State Farm's second motion for summary judgment, the trial court asked Leahy to identify any information that State Farm selectively produced. She could not do so.

After the parties submitted their appellate briefs, State Farm filed a statement of additional authority attaching Division Two's opinion in Richardson v. Government Employees Insurance Company.[39] Richardson fails to provide helpful guidance.

Christine Richardson was injured in an auto accident and the at-fault driver's insurance company settled for its $25,000 policy limits.[40] Richardson had $35,000 of PIP and $50,000 in UIM with Government Employees Insurance Company (GEICO). When GEICO stopped paying for Richardson's medical treatments under the PIP policy, Richardson retained an attorney and demanded arbitration.[41] GEICO also retained an attorney, and the PIP arbitrator awarded Richardson the $35,000 limit of her PIP policy.[42] She then filed a UIM claim, but GEICO determined that she had already been fully compensated and denied UIM coverage.[43] Richardson sued, alleging that GEICO breached its duty to deal in good faith when it wrongfully denied her claims for PIP and UIM benefits.[44]

---

[39] 200 Wn. App. 705, 403 P.3d 115 (2017).

[40] Id. at 707.

[41] Id.

[42] Id.

[43] Id.

[44] Id. at 708.

Discovery issues arose, and the trial court performed an in camera review.[45] GEICO had already disclosed its claim file, but the trial court ordered disclosure of all of the documents submitted for review, including most documents related to activity taking place after Richardson sued.[46]

On appeal, the court held that the trial court erred in requiring GEICO to produce materials compiled after the lawsuit had been filed.[47] The court held that privileged "postlitigation materials, work product, and information in [the] UIM bad faith" action were not discoverable.[48]

In Richardson, the court specifically held that the postlitigation materials were not discoverable. But the court was *not* asked to address whether the trial court would have abused its discretion had it determined that a portion of the earlier materials was *not* discoverable. Also, the opinion notes that the trial court did allow for redaction of some prelitigation documents but does not specify what those documents contained.[49]

As we read Richardson, had Leahy sought any materials that were prepared after she commenced this action on November 15, 2015, they would have been protected. Because the trial court did not abuse its discretion in protecting documents that State Farm produced after Leahy sent her demand

---

[45] Id.

[46] Id. at 708-10.

[47] Id. at 716-17.

[48] Id. at 721.

[49] Id. at 708 n.2.

16

letter but before she filed her extracontractual claims, this case has no bearing on the proper analysis of this argument.

## REASONABLENESS OF DENIAL OF UIM COVERAGE

Leahy next argues that there are genuine issues of material fact whether State Farm's refusal to pay UIM benefits was reasonable. We agree.

"[S]ummary judgment is appropriate where there is 'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'"[50] Although the evidence is viewed in the light most favorable to the nonmoving party, if that party is the plaintiff and it fails to make a factual showing sufficient to establish an element essential to its case, summary judgment is warranted.[51] Once the moving party shows there are no genuine issues of material fact, the nonmoving party must bring forth specific facts to rebut the moving party's contentions.[52]

> [A]n insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith. To succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded. Whether an insurer acted in bad faith is a question of fact. Accordingly, an insurer is entitled to a directed verdict or a dismissal on summary judgment of a policyholder's bad faith claim only if there are no disputed material facts pertaining to the reasonableness of the insurer's conduct under the circumstances,

---

[50] Elcon Const., Inc. v. E. Washington Univ., 174 Wn.2d 157, 164-65, 273 P.3d 965 (2012) (quoting CR 56(c)).

[51] Young v. Key Pharmaceuticals, Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989), overruled on other grounds by 130 Wn.2d 160 (1996).

[52] Elcon Const., Inc., 174 Wn.2d at 169.

or the insurance company is entitled to prevail as a matter of law on the facts construed most favorably to the nonmoving party.[53]

"[A]n insurer's denial of coverage, without reasonable justification, constitutes bad faith."[54] "The insurer is entitled to summary judgment if reasonable minds could not differ that its denial of coverage was based upon reasonable grounds."[55]

> However, the existence of some theoretical reasonable basis for the insurer's conduct does not end the inquiry. The insured may present evidence that the insurer's alleged reasonable basis was not the actual basis for its action, or that other factors outweighed the alleged reasonable basis.[56]

Finally, for purposes of a bad faith or CPA claim based on a denial of UIM benefits, a disparity between the ultimate award and the insured's initial offer is not enough, standing alone, to establish bad faith or a CPA violation.[57]

To summarize, questions of fact such as whether an insurer acted in bad faith may only "be determined on summary judgment as a matter of law where reasonable minds could reach but one conclusion."[58]

---

[53] Smith v. Safeco Ins. Co., 150 Wn.2d 478, 484, 78 P.3d 1274 (2003) (internal citations omitted).

[54] Indus. Indem. Co. of the NW. v. Kallevig, 114 Wn.2d 907, 917, 792 P.2d 520 (1990); see Smith, 150 Wn.2d at 486; see generally chapter 19.86 RCW; RCW 48.30.015(1); WAC 284-30-330.

[55] Smith, 150 Wn.2d at 486.

[56] Id.

[57] Perez-Crisantos v. State Farm Fire & Cas. Co., 187 Wn.2d 669, 684, 389 P.3d 476 (2017).

[58] Smith, 150 Wn.2d at 485.

We review de novo a trial court's order granting summary judgment.[59]

Leahy alleged violations of common law bad faith, the CPA, and IFCA based on State Farm's failure to pay her UIM benefits and alleged failure to adequately investigate her claim. State Farm moved for summary judgment on the grounds that it handled her UIM and PIP claims reasonably as a matter of law. It argued that it had made its decisions after consulting with its experts, and it submitted documentation in support of its decision including the opinion testimony of Dr. Ta and Dr. Lecovin.

The issue is whether, on this record, State Farm established that there were no genuine issues of material fact whether its actions were reasonable under the circumstances. We conclude that it failed in its burden and that summary judgment was incorrectly granted.

### UIM for Expenses Associated with DM

Leahy claims that State Farm acted in bad faith because it failed to consider the testimony of Dr. Brown and her other treatment providers when it refused to offer any reasonable amount to settle her claimed DM-related injuries. She argues that State Farm failed to provide any evidence showing how it incorporated her expert's opinion into evaluating her UIM claim and its settlement offers. She notes that Dr. Brown provided expert evidence that her DM was caused on a more probable than not basis by the automobile collision. She acknowledges that Dr. Ta disagreed. She argues that State Farm's settlement

---

[59] Elcon Const., Inc., 174 Wn.2d at 164.

offers were unreasonable in not addressing her DM-related damages "at least to some degree."

State Farm argues that it was reasonable for it to deny DM-related benefits based on Dr. Ta's opinion because his opinion directly contradicted Dr. Brown's and it was also based on other medical experts and accepted professional standards. It argues that, based on Dr. Ta's opinion and the documentary support he relied upon in forming that opinion, any "lay person in State Farm's position would have given more weight to Dr. Ta's opinion and made an offer consistent with it."

As Smith teaches, whether an insurer acts in bad faith "remains a question of fact."[60] Thus, a question here is whether there is a genuine issue of material fact whether this insurer acted reasonably in relying solely on its expert on causation, while ignoring Leahy's expert on causation.

Both Dr. Brown and Dr. Ta are board-certified rheumatologists and both are on the faculty at the University of Washington. At the summary judgment stage with which we are concerned, both appeared qualified to render opinions whether the accident caused Leahy's DM. There was a clear conflict between two experts on a central question: causation. Could this insurer, on this record, claim that there was no genuine issue of material fact on the reasonableness of its action in solely relying on its expert? We think not.

---

[60] 150 Wn.2d at 485.

First, <u>Heide v. State Farm Mutual Automobile Insurance Company</u>, is instructive.[61] In May 2015, Christopher Heide was in an auto accident with an uninsured motorist that caused pain to his lower back, left side, and left leg.[62] In August 2015, he reported he had been hospitalized for internal bleeding, and his doctors believed the bleeding was caused by the ibuprofen he took for his injuries from the accident.[63] In February 2016, he submitted a demand letter to his insurer requesting the UIM policy limits of $50,000.[64] State Farm's injury claim trainer reviewed Heide's medical records and concluded that, although the cause of the bleeding was unknown, it was "thought to be the result of the use of too much NSAID [ibuprofen] medication."[65] In March 2016, State Farm extended an offer of $11,900, explaining that it did not consider the bleeding to be due to the accident.[66] The offer was later increased to $12,840 and waiver of $4,970.90 of PIP benefits.[67] Heide sued State Farm for common law bad faith and violation of IFCA.

The United States District Court for the Western District of Washington denied State Farm's motion for summary judgment because there was a genuine

---

[61] 261 F. Supp. 3d 1104 (W.D. Wash. 2017).

[62] <u>Id.</u> at 1106.

[63] <u>Id.</u>

[64] <u>Id.</u>

[65] <u>Id.</u>

[66] <u>Id.</u>

[67] <u>Id.</u>

dispute of material fact concerning the reasonableness of State Farm's determination that Heide's gastro-intestinal bleeding was unrelated to the accident.[68] It noted that "[a]lthough no doctor has been able to conclusively determine the etiology of plaintiff's gastro-intestinal bleeding, NSAIDs are a well-known risk factor and the claim file clearly indicates that State Farm knew at the time it made the offer that plaintiff's medical providers believed that NSAIDs were the cause."[69] The court further observed that no test ruled out that NSAIDs caused the bleeding and no alternative causes were determined.[70]

Another case, Anderson v. State Farm Mutual Insurance Company, albeit not involving disputed medical opinions, addresses an insurer's choice to ignore one version of disputed testimony.[71]

Sharon Anderson suffered severe injuries when she lost control of her car and hit a cement barrier.[72] She and her passenger told State Farm that she was driving carefully and that another "big old white car" swerved in front of her.[73] But another witness, Paul Benedict, described the event differently, reporting that Anderson's car and a Camaro had been speeding, tailgating, and "zig-zagging" in

---

[68] Id. at 1108.

[69] Id.

[70] Id.

[71] 101 Wn. App. 323, 2 P.3d 1029 (2000).

[72] Id. at 326.

[73] Id. at 327.

two lanes when another car moved in front of them.[74] Jason Gipe, the driver of the Camaro, said Anderson had tried to pass him on the shoulder of the road and hit the barrier when she attempted to reenter the highway.[75] State Farm ignored Anderson and her passenger's version of the events and, based solely on the witnesses against her, offered Anderson $7,500 of UIM.[76] After Benedict altered his version to state that Anderson tried to pass the Camaro on the shoulder, State Farm determined that Anderson had no UIM claim because she was the sole cause of the accident.[77]

Anderson demanded arbitration, the arbitrator concluded Anderson was 25 percent negligent, and State Farm then paid Anderson her UIM policy limits of $100,000.[78] Anderson sued State Farm for bad faith and violation of the CPA, and the trial court granted summary judgment to State Farm.[79]

This court reversed on a number of Anderson's claims.[80] It held that whether State Farm acted in bad faith and violated the CPA by first offering

---

[74] Id.

[75] Id. at 328.

[76] Id.

[77] Id.

[78] Id.

[79] Id. at 328-29.

[80] Id. at 331-37.

$7,500 and then offering no UIM benefits presented an "issue of the reasonableness [which] is for the finder of fact to determine"[81]

We see these cases as instructive on whether it is reasonable for an insurer to deny coverage based solely on its own expert when there is other credible evidence on causation. This is a factual question, and State Farm fails to persuasively explain why this factual question was properly decided on summary judgment.

A related question is whether the offers made by State Farm were reasonable, on this record. Leahy characterizes the offers as "low ball," a determination we need not make. What we do hold is that the amount of the offers, on this record, also raises the question whether they were reasonable under the circumstances. This, too, is a factual question that cannot be determined on summary judgment.

State Farm relies on Keller v. Allstate Insurance Company, arguing that there, summary judgment was granted on the reasonableness of the insurer's settlement offer after comparing the offer to Lydia Keller's medical records and expert reports.[82] But its reliance is misplaced because Keller's bad faith and CPA claims were resolved in a bench trial, not on summary judgment.[83] Here, the question is whether summary judgment was properly granted, avoiding a trial.

---

[81] Id. at 336.

[82] 81 Wn. App. 624, 915 P.2d 1140 (1996).

[83] Id. at 629; see Anderson, 101 Wn. App. at 335-36.

24

State Farm also cites to American Manufacturers Mutual Insurance Company v. Osborn, where the court held that the disparity between an offer and subsequent arbitration award was not enough to raise an issue of material fact on Lora Osborn's claimed violation of WAC 284-30-330(7).[84] But in that case, the disparity of the offer and the subsequent arbitration award was the only evidence of an unreasonably low offer.[85] More importantly, Osborn is not a UIM case and it does not address a difference of opinion between two medical experts.[86]

In relying on Osborn, State Farm improperly characterizes Leahy's argument as solely claiming bad faith based on the disparity between its decision and the eventual award.[87] But Leahy is also arguing that State Farm should have accorded some weight to Dr. Brown's opinion.

We take this opportunity to explain that the focus of our analysis is the record that existed at the time of the summary judgment hearing. At that time, no one knew that the jury would award Leahy over $800,000 in damages based on her contractual claims at trial. So, the proper focus of our analysis is what State Farm knew at the time of the summary judgment determination. It is undisputed that it knew of the conflict in testimony of the two experts on causation. Likewise,

---

[84] 104 Wn. App. 686, 700-01, 17 P.3d 1229 (2001).

[85] Id.

[86] See generally id. at 690-95.

[87] See Perez-Crisantos, 187 Wn.2d at 684.

it was then able to make its own assessment on how much it would offer to settle and when.

State Farm argues that there is no genuine issue of material fact because Leahy was seeking UIM benefits for expenses associated with her DM. It relies on language in the supreme court's opinion in Ellwein v. Hartford Accident & Indemnity Company that UIM is "unique from other types of insurance" in that "it is 'designed to place the insured in the same position as if the tortfeasor carried liability insurance."[88] Relying on Ellwein, State Farm argues that it was "free to be adversarial within the confines of the normal rules of procedure and ethics."[89] It argues it had no duty to "indiscriminately accept Leahy's assertions about the causation of her DM," but instead only had to have a "reasonable basis" for its actions.[90]

This is a remarkable position to take in dealing with an insured who has purchased UIM insurance. The sale of such insurance carries with it the duty to deal in good faith with its insured. While UIM insurance does allow an insurer to step into the shoes of the third-party tort feasor, that does not mean that the insurer is relieved of all duty to deal with its insured in a proper manner.

---

[88] Respondent's Brief at 37; 142 Wn.2d 766, 780, 15 P.3d 640, 645 (2001), as amended (Jan. 18, 2001), and overruled by Smith v. Safeco Ins. Co., 150 Wn.2d 478, 78 P.3d 1274 (2003)).

[89] Id. (quoting Ellwein, 142 Wn.2d at 780).

[90] Id.

Moreover, in Ellwein, the supreme court expressly recognized that "the duty of good faith and fair dealing survives within the UIM relationship."[91] This case simply does not stand for the proposition that anything goes when an insurer deals with its insured in the UIM arena.

State Farm further argues that summary judgment was warranted because it only need have a reasonable basis for its actions. But the Smith court held that if "reasonable minds could differ that the insurer's conduct was reasonable, or if there are material issues of fact with respect to the reasonableness of the insurer's action, then summary judgment is not appropriate."[92] Thus, even if State Farm "can point to a reasonable basis for its action," summary judgment is not warranted because Leahy presented evidence, in the form of Dr. Brown's opinion "that other factors outweighed the alleged reasonable basis."[93]

In making this ruling, we express no opinion on how a jury may resolve these or related questions. But we emphasize these questions are for a jury, not a court, to decide.

### UIM for Non-DM Expenses

Leahy also argues that there is a genuine issue of material fact whether State Farm's settlement offer was reasonable when it repeatedly made low ball offers less than its own internal valuations. Because State Farm's settlement

---

[91] 142 Wn.2d at 780.

[92] Smith, 150 Wn.2d at 486.

[93] Id.

offers appear to have excluded DM-related coverage, this presents a separate question from whether it acted reasonably in failing to accord any weight to Dr. Brown's testimony and denying DM-related benefits. We conclude that Leahy is correct.

On December 2, 2013, Jung updated his "low value estimate" for damages for Leahy's past pain and suffering from $4,000 to $7,000. On December 5, 2013, State Farm informed Leahy that it would not make a "new money" offer under her UIM claim but it would waive $1,615 of its PIP subrogation claim against Leahy's $9,128.50 settlement. Leahy claims that State Farm's first offer was unreasonable because it was less than the total amount of its internal value of her claim ($9,128.50 of past medical plus $7,000 pain and suffering).

After receiving Dr. Ta's report, State Farm made a second offer to waive $11,116 in PIP although it failed to explain why it increased the settlement offer, given Dr. Ta's opinion that Leahy's DM did not result from the accident. Leahy argues that even with its second offer, State Farm was still making a low ball offer because it was only waiving subrogation of PIP instead of offering actual UIM dollars. She argues that since she received the policy limits from the tort-feasor, State Farm's use of the PIP waiver rather than a UIM offer itself was unreasonable.

The general rule is that, even if an insurer is entitled to reimbursement from payments its insured recovers from a responsible tort-feasor, the insurer's

right to subrogation only arises after the insured has been whole.[94] And it is the insurer's burden to prove the insured had received double recovery.[95]

Leahy argues that State Farm failed in its burden to prove at summary judgment that she was fully compensated before it claimed entitlement to the offset or subrogation payments. Here, by offering only a PIP waiver, Leahy argues that State Farm's offer was unreasonably low. And, because the jury later awarded her all of her damages, both DM-related and non-DM related, it is a genuine issue of material fact whether Leahy was fully compensated for her injuries from the $9,128.50 payment so as to render State Farm's offer to waive subrogation reasonable.

State Farm argues that the amount of Leahy's medical bills in the original UIM demand is not "undisputed" because it never agreed that the $9,128.50 she claimed is correct. Because the amount is disputed, State Farm argues that Leahy's attempts to parse State Farm's first offer are groundless.

But uncertainties do not establish that the offer was reasonable as a matter of law. The reasonableness of the offer on the record before the trial court at the summary judgment hearing was still a question of fact.

State Farm also argues that any error was harmless because it made a second offer in June 2014. But Leahy claims this offer was unreasonable as well. Thus, this factual issue remains unresolved.

---

[94] Thiringer v. American Motors Ins. Co., 91 Wn.2d 215, 219, 588 P.2d 191 (1978).

[95] Sherry v. Financial Indem. Co., 132 Wn. App. 355, 368, 131 P.3d 922 (2006), aff'd and remanded, 160 Wn.2d 611, 160 P.3d 31 (2007).

State Farm also disputes Leahy's claim that its internal evaluation of the low end of her pain and suffering damages changed from $4,000 to $7,000 on December 2, 2013. It claims that this is the only piece of internal evaluation evidence Leahy has so it is meaningless without context.

This argument is remarkable in that the need for "context" suggests a need for additional information that only State Farm could supply. We cannot see how State Farm should be allowed to argue that the evidence is meaningless out of context, yet not provide that context at the summary judgment hearing.

## ATTORNEY FEES

Leahy argues that she is entitled to recover her reasonable attorney fees at trial and on appeal with regard to her CPA and IFCA claims.[96] Because such an award is premature, we disagree.

Although attorney fees are available under the CPA and IFCA, we reverse the summary judgment grant and remand for trial. Any decision about attorney fees should be made by the trial court after trial, in the first instance.

We affirm the trial court's discovery orders, reverse the order granting summary judgment, and remand for further proceedings.

_____
Cox, J.

WE CONCUR:

_____     _____
                                     Spearman, J.

---

[96] See RCW 19.86.090; RCW 48.30.015.

30